Warner JACKSON, Jennifer Evans, Wendell Harris, The Reverend Andrew Kennedy, Rabbi Isaac Serotta, Ceil Ann Libber, Father Thomas J. Mueller, Reverend John N. Gregg, Diane Brewer, Colleen Beaman, Mary Morris, Penny Morse, Kathleen Jones and Philip Jones, Plaintiffs-Respondents,

v.

John T. BENSON, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle MILLER, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

PARENTS FOR SCHOOL CHOICE, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, by its President, M. Charles Howard, Michael Lengyel, Donald Lucier, Tracy Adams, Milwaukee Public Schools Administrators and Supervisors Council, Inc., by its Executive Director, Carl A. Gobel,

681

People for the American Way, by its Executive Vice President and Legal Director, Elliott M. Minceberg, John Drew, Susan Endress, Richard Riley, Jeanette Robertson, Vincent Knox, Bertha Zamudio, James Johnson, Robert Ullman and Sally F. Mills, Plaintiffs-Respondents,

v.

John T. BENSON, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle MILLER, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

PARENTS FOR SCHOOL CHOICE, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Felmers O. Chaney, Lois Parker, on behalf of herself and her minor child, Rashaan Hobbs, Derrick D. Scott, on behalf of himself and his minor children, Deresia C.A. Scott and Desmond L.J. Scott, Constance J. Cherry, on behalf of herself and her minor children, Monique J.

682

Branch, Monica S. Branch, and William A. Branch, Plaintiffs-Respondents,

v.

John T. BENSON, Superintendent of Public Instruction of Wisconsin, in his official capacity, Defendant-Appellant.

Supreme Court

*No. 97–0270. Filed February 19, 2002.*

2002 WI 14

(Also reported in 639 N.W.2d 545.)

¶ 1. PER CURIAM Four of the twenty-nine plaintiffs-respondents[1] in *Jackson v. Benson,* 218 Wis. 2d 835, 578 N.W.2d 602 (1998), *cert. denied,* 525 U.S. 967 (1998), move this court to vacate its decision of June 10, 1998, upholding the constitutionality of the state's amended Milwaukee Parental Choice Program (MPCP). As grounds for their motion, the four respondents assert that they recently received new information that this court's decision was rendered by an improperly constituted panel because of the participation of a justice disqualified by law. The respondents seek to reinforce their motion by noting that the school choice issue is currently pending before the United States Supreme Court on a similar constitutional challenge to an Ohio school choice program. *See Zelman v. Simmons-Harris,* 234 F.3d 945 (6th Cir. 2000), *cert. granted,* 533 U.S. ___ (No. 00–1751). Oral argument in *Zelman* is scheduled for February 20, 2002. The respondents assert that at least three parties to this court's decision in *Jackson v. Benson* who support school choice have submitted amicus briefs to the United States

---

[1] Carl A. Gobel, Warner Jackson, Father Thomas J. Mueller, and Wendell Harris.

685

Supreme Court and are likely to have cited *Jackson v. Benson* as persuasive authority.

¶ 2.  We dismiss the respondents' motion because it is untimely and frivolous as a matter of law. More than 1300 days have passed since this court issued its decision in *Jackson v. Benson*. More importantly, more than 600 days have passed since the information advanced by respondents in support of their disqualification claim[2] became publicly known. Inasmuch as motions such as this constitute an attack on the integrity of this court's decisions, they must be brought promptly.

---

[2] Respondents contend that Justice Jon P. Wilcox was disqualified under Wis. Stat. § 757.19(2) and (3) (1999–2000), which provides:

(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

(b) When a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous.

(c) When a judge previously acted as counsel to any party in the same action or proceeding.

(d) When a judge prepared as counsel any legal instrument or paper whose validity or construction is at issue.

(e) When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court.

(f) When a judge has a significant financial or personal interest in the outcome of the matter. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

686

This one was not. Respondents' inordinate and unexplained delay in raising the disqualification issue in a timely fashion constitutes a waiver of whatever objections they may have had in this regard and lead us to the conclusion that the motion to vacate is frivolous.

I

¶ 3.  We set forth the significant facts surrounding *Jackson v. Benson* and respondents' claims that Justice Jon P. Wilcox should not have participated in the decision.

¶ 4.  The constitutionality of the amended MPCP has been before this court on two occasions. In 1996 this court heard argument in an original action. On March 29, 1996, this court split three-three over the constitutionality of the amended MPCP, with Justice Wilcox voting to uphold it. *State ex rel. Thompson v. Jackson,* 199 Wis. 2d 714, 720, 546 N.W.2d 140 (1996). The case was remanded to Dane County Circuit Court, which later found the statute unconstitutional.

¶ 5.  On April 1, 1997, Justice Wilcox won a ten-year term on this court, defeating Milwaukee attorney Walter Kelly by a margin of 185,437 votes.[3] On April 3, 1997, two days after the election, there was a press report that an anonymous group of individuals had

(3) Any disqualification that may occur under sub. (2) may be waived by agreement of all parties and the judge after full and complete disclosure on the record of the factors creating such disqualification.

All subsequent statutory references to the Wisconsin Statutes are to the 1999–2000 volumes unless otherwise indicated.

[3] The vote totals were 476,900 for Justice Wilcox and 291,463 for Attorney Kelly. *State of Wisconsin Blue Book* at 870 (1997–98).

687

spent an estimated $135,000 to print and mail as many as 450,000 postcards to support Justice Wilcox's election.[4] In April 1997 Mark Block, the campaign manager for the Justice Wilcox for Justice Campaign (JWJC), admitted to the public that he had been contacted in January and March by the group that sent the postcards, but he did not identify the group. The names of the persons who gave the money were not revealed at that time, nor was it revealed that the donors were school choice proponents.

¶ 6. On June 16, 1997, an organization called The Wisconsin Coalition for Voter Participation (WCVP) was identified as the group that coordinated the postcard mailing. On July 30, 1997, the State Elections Board voted unanimously to investigate the anonymous mass mailing. The investigation ultimately revealed that WCVP made disbursements and incurred obligations of approximately $200,000 on mailings and telephone calls to targeted voters.

¶ 7. On August 22, 1997, the court of appeals, in a two-one decision, affirmed an order of the circuit court for Dane county, Paul B. Higginbotham, Judge, finding the amended MPCP unconstitutional. *Jackson v. Benson,* 213 Wis. 2d 1, 570 N.W.2d 407 (Ct. App. 1997). The majority of the court of appeals concluded that the amended MPCP was invalid under Article I, Section 18 of the Wisconsin Constitution because it directed payments of money from the state treasury for the benefit of religious seminaries. This court granted the state's petition for review on October 14, 1997. In late Decem-

---

[4] Cary Segall, *Expense for Wilcox Goes Unreported,* WISCONSIN STATE JOURNAL, April 3, 1997.

ber 1997 the WCVP filed a lawsuit seeking to halt the investigation into possible ties between the group and the Wilcox campaign.

¶ 8. This court heard oral argument in *Jackson v. Benson* on March 4, 1998. The court issued its decision on June 10, 1998. Justice Steinmetz authored the majority opinion reversing the court of appeals. Justices Wilcox, Geske, and Crooks joined the majority opinion. Chief Justice Abrahamson and Justice Bablitch dissented. Justice Bradley did not participate. On June 26, 1998, intervenors/respondents Parents For School Choice, et al., filed a motion for clarification of the opinion, so that for a time a post-decision motion was pending before this court.[5] The motion was subsequently withdrawn. On November 9, 1998, the United States Supreme Court denied certiorari review.

¶ 9. In November 1999 the court of appeals allowed the State Elections Board to proceed in its investigation of the connection between the WCVP mailing and the Wilcox campaign, affirming the circuit court's dismissal of the WCVP's lawsuit to halt the investigation and have the mailing declared legal. *Coalition for Voter Participation v. Elections Bd.*, 231 Wis. 2d 670, 605 N.W.2d 654 (Ct. App. 1999), *review denied,* 231 Wis. 2d 377, 607 N.W.2d 293 (1999).

¶ 10. On March 22, 2000, the State Elections Board unanimously adopted the following motion:

MOTION: TO EXPRESS THE SENSE OF THE ELECTIONS BOARD THAT JUSTICE JON WILCOX DID NOTHING ILLEGAL AND WAS NOT PERSONALLY RESPONSIBLE FOR ANY ILLEGAL ACTIVITIES OF HIS CAMPAIGN FOR THE OFFICE OF JUSTICE OF

---

[5] The respondents did not file any post-decision motion at this time.

THE SUPREME COURT, THE ELECTION FOR WHICH WAS HELD IN APRIL 1997; . . .

¶ 11. In the spring of 2000 the identities of the persons who contributed to the WCVP became publicly known.[6]

¶ 12. On March 20, 2001, the civil action brought by the State Elections Board against the JWJC and campaign manager Mark Block ended with a monetary settlement, stipulation, and order for dismissal. In a statement attached to the stipulation, Justice Wilcox stated:

> Last March the State Elections Board stated that it was the sense of the Board that I did nothing illegal and was not personally responsible for any illegal activities of my campaign. However, the Board's investigation has implicated my campaign manager and others in violations of the state's campaign finance law. I choose not to contest this. I acknowledge that I had a responsibility for the conduct of campaign staff. Therefore, as the candidate, I am funding my campaign committee so that the committee can pay a monetary penalty to settle this matter.

¶ 13. On January 9, 2002, respondents filed their motion to vacate the *Jackson v. Benson* decision, claiming that the facts set forth above demonstrate that Justice Wilcox was disqualified by law from participating in the case.

---

[6] Cary Segall and Andy Hall, *Big, Out-of-State Donors Weighed In For Court Case,* WISCONSIN STATE JOURNAL, March 19, 2000; Cary Segall and Andy Hall, *Wilcox Backers Revealed, GOP School-Choice Supporters Funded Secret Effort,* WISCONSIN STATE JOURNAL, April 20, 2000.

¶ 14.   The general rule is that, after remittitur, the supreme court has no jurisdiction to vacate or modify its judgment. *Ott v. Boring,* 131 Wis. 472, 110 N.W. 824 (1907). Where a justice who participated in a case was disqualified by law the court's judgment in that case is void. *Case v. Hoffman,* 100 Wis. 314, 72 N.W. 390, *reh'g granted* 74 N.W. 220 (1898). We have previously stated, "[a]n attack on the validity of a judgment of the state's highest court on the ground of a member's disqualification by law for an apparent inability to act impartially is not, nor can we conceive of it ever being, a 'routine matter.' " *State v. American TV & Appliance,* 151 Wis. 2d 175, 192, 443 N.W.2d 662 (1989). We have also said, however, that it behooves the court in the defense of its own legitimacy and of its integrity to consider a party's claim that a decision may be void because a justice should not have participated in the case. *City of Edgerton v. General Cas. Co.,* 190 Wis. 2d 510, 527 N.W.2d 305 (1995).

¶ 15.   The chronology of events in this case demonstrates that the respondents were on notice by the spring of 2000 as to the identity of the donors to WCVP and their support of the school choice issue. Instead of bringing their motion at that time, the respondents remained silent for almost another two years, raising their disqualification objection on the eve of the United States Supreme Court's oral argument in another case raising the issue of the constitutionality of a private school voucher program.

¶ 16.   Although respondents claim "it was not until a few months ago that information was made public casting a shadow on the 1997 supreme court election and highlighting the role of money in that election from

691

the advocates for the defendants in a pending case," the record amply demonstrates that all information arguably pertinent to any disqualification issue in the case was publicly known by the spring of 2000. By failing to raise the issue in a timely fashion, respondents waived whatever objections they may have had to Justice Wilcox's participation in the court's decision.

¶ 17.   We came to a similar conclusion in *City of Edgerton*. In that case Edgerton Sand & Gravel, Inc., (ES&G) moved to vacate this court's decision or, in the alternative, moved for a rehearing in the matter. Edgerton Sand & Gravel, Inc., argued that Justice Geske improperly participated in the case. At the outset of oral argument, Justice Geske stated on the record that the previous night she noted for the first time that one of the companies listed in the appendix to an amicus brief was St. Paul Companies, the employer of Justice Geske's husband. Justice Geske stated she did not believe that fact presented any conflict and it would not influence her. She informed the parties that if anyone had any objections to her sitting on the case, she would appreciate hearing from them by letter by the end of the week.

¶ 18.   No objection was raised by any of the parties until a non-party, Kenosha Auto Transport (KAT), raised the question of Justice Geske's participation in a proposed amicus brief KAT tendered to the court in support of a motion for reconsideration filed over seven months later. The motion to file an amicus brief was denied and the movants' request to seek Justice Geske's disqualification was dismissed. More than two months later ES&G filed a motion to vacate the decision, arguing that Justice Geske was disqualified under Wis. Stat. § 757.19(2) and (3) from participating in the original decision and asking for the vacation of the decision

or, in the alternative, for rehearing without Justice Geske's participation. Edgerton Sand & Gravel, Inc., argued that Justice Geske's disclosure about her connection with St. Paul Companies had been incomplete.

¶ 19. The *Edgerton* court noted that the disqualification statute provides that any disqualification "may be waived by agreement of all parties and the judge after full and complete disclosure on the record of factors creating the disqualification." Wis. Stat. § 757.19(3). The *Edgerton* court found it significant that ES&G did not argue that Justice Geske's disclosure and her setting of a time limit to object or to waive objection to her participation in the case was not a proper procedural framework for the waiver of disqualification. Instead, ES&G argued Justice Geske's disclosure was not sufficient and did not constitute a "full and complete disclosure." The *Edgerton* court said:

> We conclude that under the circumstances of this case the disclosure made by Justice Geske was sufficient— that all the facts necessary for counsel to determine whether to assert or waive any disqualification were either disclosed or were readily obtainable of record prior to the "weekend deadline" suggested by Justice Geske. Following that disclosure, if ES&G had been concerned, it could have examined the financial disclosures Justice Geske had filed with the Ethics Board and if those disclosures did not satisfy ES&G in respect to Justice Geske's financial ties to St. Paul Companies, it could have asked for more information from her or could have advised her "by the end of the week" that it objected to her participation.
>
> If ES&G's counsel examined the public record, it apparently did not deem the information in it sufficient to pursue the disqualification issue. Now, however, ES&G's substituted counsel asserts that Justice Geske's disqualification was required on the basis of

inferences it makes from that information. Clearly, ES&G waived any possible disqualification by not acting by the "end of the week" and for one year following oral argument.

Even after the court's decision on June 16, 1994—after learning that Justice Geske was the scrivener for the court—ES&G's counsel did not raise the question of Justice Geske's qualification to sit but asserted in its reconsideration motion only that the court had failed to follow what counsel considered controlling law. Despite the fact that ES&G had been served with a copy of KAT's proposed amicus motion and brief raising the disqualification issue, it did not join in KAT's motion or express to the court in its motion for reconsideration on the merits any position in respect to disqualification.

Hence, we conclude that on at least two discrete occasions, ES&G's counsel failed to make any objection to Justice Geske's participation. These successive waivers in themselves bar ES&G from asserting its motion for vacatur at this time, months after it could have informed itself of the facts on which its motion is based and made any concern known to the court.

*Id.* at 518–19.

¶ 20. The same analysis applies with even greater force in this case. Although there was no judicial disclosure here, the basic facts upon which the respondents now rely in raising the issue of Justice Wilcox's participation were readily available as of the spring of 2000. Yet respondents did not raise the disqualification issue at that time; indeed, their inaction continued for almost another two years.

¶ 21. Not until January 9, 2002, twenty-one months after the identity of the donors to WCVP became publicly known, did respondents file a motion to vacate the decision. Respondents' delay in bringing the motion mandates a finding of waiver. Although respon-

dents claim the motion was filed in January of 2002 because of "new information," this court has searched the entire record and found nothing "new." Instead, all of the facts arguably pertinent to the disqualification claim were well known in the spring of 2000.

¶ 22.   The respondents' inordinate delay in filing the motion to vacate mocks the fundamental and vital principle of finality, which is essential to the operation of a society governed by law. *See Wittke v. State ex rel. Smith,* 80 Wis. 2d 332, 342, 259 N.W.2d 515 (1977). Motions such as this, having the potential to undermine the public's trust and confidence in the legitimacy of this court's decisions and the integrity and impartiality of this court as an institution, are very serious indeed, and, accordingly, must be raised in a timely fashion.

II

¶ 23.   The State of Wisconsin and Marquelle Miller, et al., ask this court to assess reasonable attorney fees and costs against respondents and their counsel pursuant to Wis. Stat. § 809.25(3).[7] We agree that the extraordinary untimeliness of the motion to vacate justifies a finding of frivolousness. The fact that the

---

[7] Wisconsin Stat. § 809.25(3) provides:

(3) Frivolous appeals. (a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section. A motion for costs, fees and attorney fees under this subsection shall be filed no later than the filing of the respondent's brief, or if a cross-appeal is filed, the cross-respondent's brief.

(b) The costs, fees and attorney fees awarded under par. (a) may be assessed fully against the appellant or cross-appellant or the attorney representing the appellant or cross-appellant or may be

assessed so that the appellant or cross-appellant and the attorney each pay a portion of the costs, fees and attorney fees.

(c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:

The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Although the state and Marquelle Miller seek costs and attorneys fees under § 809.25(3), we note that § 802.05(1)(a) provides, in pertinent part,

. . . The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

Section 809.84 provides: [a]n appeal to the court is governed by the rules of civil procedure as to all matters not covered by these rules unless the circumstances of the appeal or the context of the rule of civil procedures requires a contrary result.

oral argument of another state-funded private school voucher case in the United States Supreme Court calls the timing of and motives behind the respondents' motion into question.

¶ 24. We conclude that the motion to vacate, coming as it did almost two years after the public disclosure of the information pertinent to the respondents' claims and shortly before oral argument in the United States Supreme Court, was filed in bad faith, for improper purpose, to undermine the public's confidence in the legitimacy of this court's decision and the integrity of this court as an institution. The seriousness of a motion of this sort is not an excuse for tardiness in bringing it; to the contrary, the gravity of this type of motion compels that it be timely brought to ensure a prompt resolution. The only reasonable inference that can be drawn from the inordinate untimeliness and suspect timing of this motion is that it was brought in bad faith for improper purpose. Any other conclusion would seriously undermine the concept of frivolousness. We grant the motions of the state and Marquelle Miller, et. al., for an award of reasonable attorney fees and costs incurred in responding to the motion to vacate. We remand the matter to the Dane County Circuit Court for a determination of the amount of reasonable attorney fees and costs.

¶ 25. JON P. WILCOX and ANN WALSH BRADLEY, JJ., did not participate.

¶ 26. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring in part, dissenting in part*). I join only Part I of the court's opinion. I do not join Part II of the

---

We thus consider the state's and Marquelle Miller's motions under both §§ 802.05(1)(a) and 809.25(3).

opinion remanding the matter to the Dane County Circuit Court to determine the amount of reasonable attorney fees and costs for a frivolous action. This proceeding ought to end now.