In the MATTER OF ATTORNEYS FEES IN:
Grant E. STORMS, plaintiff, v. ACTION WISCONSIN INC.
and Christopher Ott, defendants.

James R. DONOHOO, Appellant,

v.

ACTION WISCONSIN, INC. and Christopher Ott,
Respondents-Petitioners.

Supreme Court

*No. 2006AP396.—Decided July 30, 2008.*

2008 WI 110

(Also reported in 754 N.W.2d 480.)

¶ 1. PER CURIAM. On June 5, 2008, this court issued a decision reversing a court of appeals' decision, which, in turn, reversed a circuit court judgment requiring Attorney James R. Donohoo to pay costs and attorney fees for filing and maintaining a defamation lawsuit that was found to be frivolous. *Donohoo v. Action Wisconsin Inc.*, 2008 WI 56, 309 Wis. 2d 704, 750 N.W.2d 739. The case was decided by a 4–3 vote, with Justice Bradley writing the majority opinion, in which Chief Justice Abrahamson, Justice Crooks, and Justice Butler joined. Justice Roggensack authored a dissent, in which Justice Prosser and Justice Ziegler joined.

¶ 2. Donohoo has filed a motion to vacate the decision based on the disqualification of Justice Butler by law.[1] The alleged grounds for disqualification are that Justice Butler accepted serial campaign contributions from Donohoo's opponent without disclosing those

---

[1] On June 26, 2008, Donohoo filed a motion for reconsideration and petitions for Justice Butler's disqualification and

contributions to Donohoo, in violation of his pledge not to do so; that Justice Butler appeared at a fund raiser for a political action committee (PAC) supporting lesbian, gay, bisexual and transgender (LGBT) rights;[2] and that Justice Butler obtained the endorsement of one of the attorneys for Action Wisconsin.

¶ 3. Based on the record before us and the applicable law, we conclude that the facts alleged by Donohoo do not support a finding that Justice Butler was disqualified by law from participating in this matter. Consequently, we deny Donohoo's motion.

## I

¶ 4. Donohoo filed a defamation complaint on behalf of Grant E. Storms against Action Wisconsin and Christopher Ott, its executive director. Action Wisconsin filed an answer to the complaint and a motion for costs and attorney fees pursuant to Wis. Stat. §§ 802.05 and 814.025. The circuit court granted the motion, concluding that prior to filing the lawsuit Donohoo knew or should have known that neither the facts nor the law supported the claim of actual malice, which would have to be shown by clear and convincing evidence. The circuit court also concluded that Donohoo had failed to conduct a reasonable inquiry into the claim before filing the lawsuit and that Donohoo continued the lawsuit even though he knew or should have

for rehearing. On July 7, 2008, he filed a "stipulation for dismissal" of the motion for reconsideration, in which he stipulated that the motion for reconsideration was untimely, and a request to withdraw the two petitions. This court dismissed the motion for reconsideration as untimely and granted Donohoo's request to withdraw the petitions on July 30, 2008.

[2] The materials attached to the memorandum in support of Donohoo's motion identify the PAC as the "Center Advocates Political Action Committee-Wisconsin LGBT PAC."

known that the claim was brought "without any reasonable basis in law or equity." The court of appeals reversed, concluding Donohoo did engage in a reasonable inquiry into the facts and law and that there were disputed issues of material fact regarding whether there was actual malice. This court reversed, concluding that the circuit court did not err in determining that the defamation suit was frivolously commenced and continued.

¶ 5. Donohoo now asserts that he has discovered evidence that Justice Butler was disqualified by law from participating in this case because of his financial and personal interest in the outcome of the matter and his violation of supreme court rules. The memorandum in support of Donohoo's motion attaches a detailed chronology of events that Donohoo deems significant. That chronology, with minor editing, is as follows:

| | |
|---|---|
| 2/2/2006 | Circuit court dismisses Donohoo's suit as frivolous. Action Wisconsin represented by Attorneys Lester Pines and Tamara B. Packard. |
| 2/16/2006 | Donohoo files notice of appeal. Action Wisconsin forms Fair Wisconsin as its PAC opposing Wisconsin's Marriage Protection Amendment in the 2006 election. |
| 9/11/2006 | Pines files motion for frivolous costs. |
| 11/3/2006 | Fair Wisconsin pays NGL Task Force $5,298. Fair Wisconsin transfers $27,000 and all of its remaining debt to Action Wisconsin. |
| 12/16/2006 | Fair Wisconsin transfers $27,590.66 cash and related debt to Action Wisconsin, Inc. Action Wisconsin changes its name to Fair Wisconsin. |

514

| | |
|---|---|
| 5/30/2007 | Appeals court reverses order and judgment. |
| 6/29/2007 | Pines files notice of intent to appeal. |
| 6/30/2007 | Peter Bock, Fair Wisconsin board member, contributes $125 to Butler's campaign. Butler does not disclose contribution. |
| 7/13/2007 | Pines submits petition for supreme court review. |
| 7/23/2007 | Pines contributes $300 to Butler's campaign. |
| 8/26/2007 | Butler speaks at LGBT PAC garden party. |
| 9/11/2007 | Supreme court accepts review. |
| 10/9/2007 | Tamara Packard, Action Wisconsin attorney, files motion for miscellaneous relief. |
| 10/15/2007 | Oral arguments assigned. |
| 11/28/2007 | Butler announces he will advise all parties of having accepted contributions. Butler previously announced that while he would not accept campaign contributions from parties to cases before the court, he would accept contributions from attorneys representing parties in cases, but that he would disclose those contributions. Media reports indicate Butler did not immediately disclose that an attorney appearing before the court sat on his campaign finance committee and contributed $500 to his election campaign. |
| 12/3/2007 | Butler sends letter advising parties of the Pines contribution. |

515

| | |
|---|---|
| 12/7/2007 | Ruth Irvings, Fair Wisconsin board member, contributes $100 to Butler's campaign. Butler does not disclose contribution. |
| 1/15/2008 | Oral argument heard. |
| 1/22/2008 | Wisconsin LGBT PAC issues endorsement of Butler for Supreme Court. |
| 1/28/2008 | Ruth Irvings contributes $1,000 to Butler campaign. Butler fails to disclose contribution. |
| 2/7/2008 | Butler concurs in decision prohibiting municipal governments and legislators from joining as parties in *Helgeland v. Wisconsin Municipalities*, 2008 WI 9, 307 Wis. 2d 1, 745 N.W.2d 1, a case brought by State employees relating to State benefits. |
| 2/19/2008 | Fair Wisconsin announces absentee ballot drive for supreme court race and announces absentee ballot effort for spring general election. |
| 3/24/2008 | Butler gives radio interview in which he talks about appearing at LGBT garden party. |
| 3/25/2008 | Tamara Packard writes editorial in *Wisconsin Gay News from Quest* endorsing Butler for supreme court. |

¶ 6. Donohoo asserts that on November 27, 2007, the *Milwaukee Journal-Sentinel* reported that Justice Butler stated he would refuse donations from parties that had cases before the court but that he would accept donations from attorneys representing parties and would disclose those contributions to litigants. Donohoo acknowledges that on December 3, 2007, Justice

516

Butler sent him a letter disclosing Lester Pines' $300 contribution and informing Donohoo that the contribution would not affect Justice Butler's impartiality in his participation in the case.[3] Donohoo did not raise any objection to Justice Butler's participation in the case after receiving the letter.

¶ 7. Donohoo further asserts that approximately two weeks before this court issued its decision, he learned that on March 28, 2008, Wisconsin Family Action, Inc., had filed a formal request for investigation with the Wisconsin Judicial Commission, charging that Justice Butler had misled citizens and impaired his ability to render fair and impartial decisions in cases affecting gay rights and marriage.

¶ 8. According to Donohoo, the document filed with the Judicial Commission by Wisconsin Family Action stated that between June 2007 and January 2008, Peter Bock and Ruth Irvings, two of the twelve board members of Fair Wisconsin, Action Wisconsin's PAC, made contributions to Justice Butler's election campaign. Donohoo makes no allegation that Justice Butler was aware of these contributions or that he was aware that Bock or Irvings had any connection to or interest in this case. Donohoo asserts that by accepting serial contributions from a litigant after he had vowed not to do so, and by failing to disclose the contributions, Justice Butler deprived Donohoo of the right to object to Justice Butler's participation in the case based on the contributions.

¶ 9. Donohoo also alleges that on August 26, 2007, Justice Butler appeared at a fund raiser for the Center Advocates' PAC, which supports LGBT equality and the

---

[3] A copy of Justice Butler's December 3, 2007, letter is attached as Appendix A.

passage of legislation benefiting LGBT people and their families. Donohoo alleges that the PAC's sole purpose is to advance the cause of LGBT equality, including same sex marriage. He also asserts that the PAC was working to help re-elect Justice Butler.

¶ 10. Donohoo asserts that while at the fund raiser Justice Butler avowed his support for LGBT equality and "lent the dignity of his office to help the group raise money." Donohoo also says that by appearing at the fund raiser and delivering a speech "Justice Butler joined himself at the hip with the PAC, and consequently also to Action Wisconsin," and "aligned himself with Wisconsin's premiere homosexual rights PAC and premiere radical homosexual advocacy group . . . and their common goals and agenda." Donohoo also asserts that by appearing at the fund raiser Justice Butler "tipped his hand regarding his personal bias."

¶ 11. Donohoo also alleges that on March 31, 2008, Action Wisconsin posted an entry on its Web site indicating that it had sent surveys to Justice Butler and his opponent and that only Justice Butler responded to the survey. Donohoo asserts that in his response to the survey Justice Butler said he had friends or family who were LGBT. When asked if that relationship has affected the way he saw injustices facing the community, Justice Butler said, "I respectfully decline to express an opinion on any issue where the court may be required to rule." Donohoo asserts this response verified that Justice Butler knew his speech at the fund-raising "garden party" in support of LGBT equality was inappropriate and unethical.

¶ 12. According to a transcript of a March 24, 2008, radio interview attached to the memorandum in support of Donohoo's motion, when asked about his

518

appearance at the fund raiser Justice Butler said, "I spoke at the organization about my own candidacy for the Supreme Court. I did not get involved, I don't get involved in individual cases. I don't think it's appropriate for the courts to do that." Justice Butler also said, "I think it's important for me to reach out to . . . all citizens." Donohoo asserts that on January 22, 2008, the Wisconsin LGBT PAC endorsed Justice Butler, among other candidates, saying, "These candidates have a long history of advancing LGBT equality."

¶ 13. Donohoo also asserts that while Fair Wisconsin refrained from formally endorsing Justice Butler, Fair Wisconsin "delivered . . . their endorsement through the back door" in the form of an editorial in the March 25, 2008, edition of *Wisconsin Gay News from Quest* in which Tamara Packard, one of Action Wisconsin's attorneys, urged readers to "vote for Louis Butler on April 1." Donohoo says Attorney Packard served on the board of directors of Action Wisconsin and he asserts that her law firm will be receiving any fees awarded as the result of this court's majority decision. Donohoo asserts that as the result of Attorney Packard's connections to Action Wisconsin, "the appearance of impropriety on the part of Justice Butler is palpable."

¶ 14. Donohoo asserts that Justice Butler's appearance at the fund raiser violated SCRs 60.05(1),[4]

---

[4] SCR 60.05(1) provides:

Extra-judicial Activities in General. A judge shall conduct all of the judge's extra-judicial activities so that they do none of the following:

(a) Cast reasonable doubt on the judge's capacity to act impartially as a judge.

(b) Demean the judicial office.

(c) Interfere with the proper performance of judicial duties.

60.05(3)(c)2.,[5]and 60.03.[6] Donohoo contends that "[r]estoration of public confidence in the impartiality of the decision in the petitioner's case demands that Justice Butler be disqualified by law." Donohoo further asserts that Justice Butler was disqualified by law pursuant to

[5] SCR 60.05(3)(c)2. provides: A judge, in any capacity:

a. May assist the organization in planning fund-raising activities and may participate in the management and investment of the organization's funds but may not personally participate in the solicitation of funds or other fund-raising activities, except that a judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority;

b. May make recommendations to public and private fund-granting organizations on projects and programs concerning the law, the legal system or the administration of justice;

c. May not personally participate in membership solicitation if the solicitation reasonably may be perceived as coercive or, except as permitted in subd. 2.a, if the membership solicitation is essentially a fund-raising mechanism; and

d. May not use or permit the use of the prestige of judicial office for fund raising or membership solicitation.

[6] SCR 60.03 provides as follows:

A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.

(1) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

(2) A judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge may not lend the prestige of judicial office to advance the private interests of the judge or of others or convey or permit others to convey the impression that they are in a special position to influence the judge. A judge may not testify voluntarily as a character witness.

(3) A judge may not hold membership in any organization that practices invidious discrimination on the basis of race, gender, religion or national origin.

Wis. Stat. § 757.19(2)(f)[7] because of his substantial financial and personal interest in the outcome of the case and that Justice Butler was also disqualified by law pursuant to Wis. Stat. § 757.19(2)(g),[8] which prohibits a judge from participating in a case when the judge determines he or she cannot retain his or her impartiality.

¶ 15. Further, Donohoo asserts that in deciding whether Justice Butler is disqualified by law from participating in this matter under § 757.19(2)(g), this court should apply both a subjective test and an objective test as discussed in Chief Justice Abrahamson's concurrence in *State v. Harrell*, 199 Wis. 2d 654, 665, 546 N.W.2d 115 (1996). He also points to the Chief Justice's comment in her concurrence in *Harrell* that an objective test is required by the due process guarantees of the federal and state constitutions. *Id.* at 671. Donohoo contends that Justice Butler's "pattern of conduct was guaranteed to create, at a minimum, the appearance that [he] cannot act in an impartial manner . . . ." Donohoo also raises various criticisms of the majority's decision in the instant case and says, "It does not appear that the . . . decision was based on the facts, logic, or existing law."

---

[7] Wis. Stat. 757.19(2)(f) provides:

Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

. . . .

(f) When a judge has a significant financial or personal interest in the outcome of the mater. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

[8] Wis. Stat. § 757.19(2)(g) provides: "Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs: . . . [w]hen a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner."

521

## II

¶ 16. This is not the first time we have been asked, following the issuance of a decision, to declare that a justice was disqualified by law from participation in the matter. In the past 20 years we have been faced with this issue three times. We undertook similar examinations in *State v. American TV & Appliance*, 151 Wis. 2d 175, 443 N.W.2d 662 (1989), *City of Edgerton v. General Cas. Co.*, 190 Wis. 2d 510, 527 N.W.2d 305 (1995), and *Jackson v. Benson*, 2002 WI 14, 249 Wis. 2d 681, 639 N.W.2d 545. In the present case, as in the three prior cases, we consider Donohoo's allegations and decide the matter without the need for further briefing.[9] In the present case, as in the prior three cases, we determine from the face of Donohoo's motion and accompanying documents that, even accepting all of his allegations as true, neither on the law asserted nor on the facts alleged can it be established that Justice Butler was disqualified by law from participating in this case.

¶ 17. Donohoo states that he first became aware of the alleged basis for Justice Butler's disqualification when he learned that Wisconsin Family Action, Inc., had filed a formal request for investigation with the Wisconsin Judicial Commission. That request allegedly revealed the contributions made to Justice Butler's election campaign by members of Action Wisconsin's PAC and Justice Butler's attendance at the fund raiser.

¶ 18. In *Edgerton*, Justice Geske provided the court with a letter from the Judicial Commission stating that the complaint against her had been dismissed upon the Commission's determination that there was no prob-

---

[9] On July 22, 2008 Donohoo filed a motion requesting that the court establish a briefing schedule. Because we can resolve the matter without further briefing, we dismiss the motion as moot.

able cause to believe that any violation whatsoever had occurred. *Edgerton*, 190 Wis. 2d at 522. Similarly, Justice Butler has granted a limited waiver of his confidentiality rights with respect to the Judicial Commission proceedings[10] and has furnished the court with the Judicial Commission's letter dated April 28, 2008, stating that, "[t]he Commission's examination of this matter has resulted in a determination that there is no evidence of misconduct within the jurisdiction of the Commission to warrant further action or consideration by the Commission."[11] We do not rely solely on the Commission's determination, but have also carefully examined Donohoo's allegations and all of the materials he submitted. After doing so, we too conclude that Justice Butler was not disqualified by law from participating in this case.

¶ 19. As to Donohoo's claim that Justice Butler should be disqualified by law from participating in the case pursuant to § 757.19(2)(f) because he received campaign contributions from members of Action Wisconsin's PAC and its attorney, we note that the Judicial Commission stated:

> There is no case in Wisconsin or elsewhere that requires recusal of a judge or justice based solely on a contribution to a judicial campaign. The amounts of the contributions presented in your submission are relatively insignificant. They were legal and well within the maximum for individual contributions in Supreme Court races as established by state law. There were no contributions from any litigants in cases before the

---

[10] A copy of Justice Butler's limited waiver is attached as Appendix B.

[11] A copy of the Judicial Commission's letter is attached as Appendix C.

court, but rather two board members out of twelve made personal donations as did an attorney.

SCR 60.04(4), Wisconsin Code of Judicial Conduct requires recusal when the facts and circumstances indicate that a reasonable, well-informed person knowledgeable about judicial ethics standards and the justice system would reasonably question the judge's ability to be impartial. The Wisconsin Supreme Court Judicial Conduct Advisory Committee Opinion 03–1 says as follows:

> "[T]he mere fact of prior support for, or opposition to, a judge's election does not necessarily rise to the level of an appearance of impropriety. Both the public and knowledgeable persons within the judicial system, are fully aware of, and likely comfortable with, the fact that people will support an individual for judicial office with various levels of assistance, monetary support or endorsements. This fact in and of itself does not create so close or special relationship so as to require automatic recusal."

¶ 20. In addition to there being no requirement that a judicial candidate disclose all contributions to his or her campaign, the record before us does not support Donohoo's assertion that Justice Butler violated his campaign promise regarding contributions. According to the materials Donohoo has submitted, Justice Butler said he would refuse contributions from parties with pending cases before the court, but would accept and disclose donations from attorneys with pending cases. From the record before us, it appears this is precisely what happened. Justice Butler accepted and disclosed a $300 contribution from Attorney Pines. As the Judicial Commission noted, Bock and Irvings were not *parties* to a pending action. In addition, nowhere does Donohoo

524

assert that Justice Butler knew that Bock or Irvings were board members of Fair Wisconsin. The code of judicial conduct does not require judicial candidates to attempt to research every possible organization with which contributors may have an affiliation. Such a requirement would be unduly burdensome to candidates for judicial office and we decline to impose it. ·

■

¶ 21. As to Donohoo's claim that Justice Butler acted improperly in attending the fund raiser, the Judicial Commission noted that "[j]udges and candidates for judicial office can announce their views on political and legal issues as long as they are not pledges or promises to decide cases in a certain way." In addition, we note that the Comment to SCR 60.05(3)(c)2.d provides:

> A judge may be a speaker or guest of honor at an organization's fund-raising event provided there is no advertising of the judge as speaker or guest of honor in order to encourage people to attend and make contributions and provided that any contributions at the event are made prior to the judge's speech or presentation as guest of honor. A judge's attendance at such event is permissible if otherwise consistent with this chapter.

¶ 22. There is no allegation in Donohoo's motion or accompanying materials or in the complaint that Wisconsin Family Action filed with the Judicial Commission, portions of which are attached to the memorandum in support of Donohoo's motion, that Justice Butler's attendance at the fund raiser was advertised in advance. When asked about the event in the March 24, 2008, radio interview, Justice Butler stated that while at the event he spoke about his own candidacy. We find nothing in the record to suggest that Justice Butler's attendance at the event, which is not prohibited by the code of judicial conduct, should be held to disqualify him from participating in this matter.

¶ 23. As to Donohoo's complaints about Attorney Packard's endorsement of Justice Butler's candidacy, SCR 60.06(5) explicitly provides that a judge is not prohibited from soliciting and accepting endorsements from lawyers. Indeed, the comment to SCR 60.06(5) states, "The receiving of endorsements is an important method of informing the electorate of broad-based and presumably informed support for a particular candidacy."

¶ 24. While Donohoo asserts that the court should follow Chief Justice Abrahamson's concurrence in *Harrell* and apply both subjective and objective standards in deciding whether Justice Butler was required to disqualify himself under § 757.19(2)(g), we note that the majority opinion in *Harrell* set forth the appropriate analysis to be employed as follows:

> In *American TV* we stated that subsection (2)(g) concerns "not what exists in the external world . . . but what exists in the judge's mind." *American TV*, 151 Wis. 2d at 182–83, 443 N.W.2d 662. We explained:
>
>> Section 757.19(2)(g), Stats., mandates a judge's disqualification only when that judge makes a determination that, in fact or in appearance, he or she cannot act in an impartial manner. It does not require disqualification in a situation where one other than the judge objectively believes there is an appearance that the judge is unable to act in an impartial manner; neither does it require disqualification . . . in a situation in which the judge's impartiality 'can reasonably be questioned' by someone other than the judge.

*Id.* at 183, 443 N.W.2d 662. Appellate review of this subjective determination is "limited to establishing whether the judge made a determination requiring disqualification." *Id.* at 186, 443 N.W.2d 662. *See also City of Edgerton v. General Cas. Co.*, 190 Wis. 2d 510, 521–22, 527 N.W.2d 305 (1995); *In re Disciplinary Proc. Against Crosetto*, 160 Wis. 2d 581, 584, 466 N.W.2d 879 (1991). The reviewing court must objectively decide if the judge went through the required exercise of making a subjective determination.

*Harrell*, 199 Wis. 2d at 663–64.

¶ 25. From the record before us, we find that Justice Butler clearly made a subjective determination regarding his ability to proceed in the case. In the December 3, 2007, letter he sent to the parties, Justice Butler stated that after consulting with the executive director of the Judicial Commission he chose to disclose Lester Pines' contribution and said because campaign contributions would in no way affect his judgment as to the outcome of the proceeding, he was advising the parties of his decision to participate in the case. By sending the December 3, 2007, letter and continuing to participate in the case, Justice Butler clearly determined that he could be impartial. This is all that is required by § 757.19(2)(g).

¶ 26. We do not hold that a judge is required to send a letter or otherwise give formal notice to the parties in order to demonstrate that he or she has made a subjective determination regarding his or her ability to proceed in the case. Since Justice Butler did send a letter to the parties, in this case the letter serves as an indicia that he made a subjective determination that he could be impartial. In other cases, a judge's subjective determination may be demonstrated in other ways. For example, in *State v. Carprue*, 2004 WI 111, 274 Wis. 2d

656, 684, 683 N.W.2d 31, we assumed that, in the absence of any objection, by continuing to preside in the matter a judge believed she could act in an impartial manner.

¶ 27. Donohoo appears to be asking this court to overturn the decision in *Harrell* and impose an objective standard of review for a judge's initial subjective decision not to disqualify himself or herself. We decline to do so. As we said in *Harrell*:

> Wisconsin Statute § 757.19(2)(g) is clearly drafted so as to place the determination of partiality solely upon the judge. *See American TV*, 151 Wis. 2d at 182–83, 443 N.W.2d 662. In fact, the legislature specifically included six other objectively determinable situations in subsection (2) which require withdrawal. These are the six situations on which it chose to focus. It is not this court's role under subsection (2)(g) to expand this list by requiring a judge to recuse himself or herself in *all* situations where an objective basis of impropriety may exist. If the general prohibition in (2)(g) were read so broadly, the six specific situations enumerated in the statute would become superfluous.

*Id*. at 664–65 (emphasis in original).

¶ 28. We do not address Donohoo's arguments about the merits of the court's June 5, 2008, decision. Donohoo conceded that his motion for reconsideration of the decision was untimely and should be dismissed. Consequently, arguments going to the merits of the decision are not before us. The only issue that is before us is whether Justice Butler was disqualified by law from participating in the case. We conclude he was not.

¶ 29. In addition to concluding that none of Donohoo's allegations support his contention that Justice Butler was disqualified by law from participating in the case, we are troubled by the timing of Donohoo's motion. On December 3, 2007, Justice Butler advised

the parties of Pines' campaign contribution. Donohoo could have objected to Justice Butler's participation in the case at that time but did not do so. Donohoo states that he learned about Wisconsin Family Action's complaint against Justice Butler approximately two weeks before this court issued its decision. Since the decision was issued on June 5, 2008, Donohoo presumably had all the information contained in his motion and accompanying memorandum by the third week in May, yet he failed to raise the issue of Justice Butler's participation in the case before the decision was rendered, at a time when Justice Butler could have been presented with the decision whether or not to recuse himself.

¶ 30. As we noted in *Jackson*, "Motions such as this, having the potential to undermine the public's trust and confidence in the legitimacy of this court's decisions and the integrity and impartiality of this court as an institution, are very serious indeed, and, accordingly, must be raised in a timely fashion." *Id.*, ¶ 22. While we are appreciative of the fact that requesting the disqualification of a judge by law is a very serious matter, in fairness to the parties and the court, if a party has information while a case is pending that goes to the issue of a judge's or justice's participation in the matter, that party has an obligation to promptly bring the matter to the individual judge's or justice's attention before a decision has been rendered.

¶ 31. In summary, our review of the record establishes that the claims made in Donohoo's motion to vacate the decision based on Justice Butler's disqualification are insufficient to warrant the relief sought. Accordingly, we deny the motion.

¶ 32. LOUIS B. BUTLER, JR., J., did not participate.

529

# Supreme Court of Wisconsin

16 EAST STATE CAPITOL
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688

Shirley S. Abrahamson
Chief Justice
Ann Walsh Bradley
N. Patrick Crooks
David T. Prosser, Jr
Patience D. Roggensack
Louis B. Butler, Jr
Annette K. Ziegler
Justices

Telephone (608) 266-1880
Facsimile (608) 267-0640
Web Site www.courts.gov

A. John Voelker
Director of State Courts

David R. Schanker
Clerk of Supreme Court

December 3, 2007

James R. Donohoo
James Donohoo Law Office
6525 W. Bluemound Rd., Ste. 21
Milwaukee, WI 53213-4073

Tamara Packard
Cullen, Weston, Pines & Bach LLP
122 W. Washington Ave., Ste. 900
Madison, WI 53703-2718

Lester A. Pines
Cullen, Weston, Pines & Bach LLP
122 W. Washington Ave., Ste. 900
Madison, WI 53703

Re: James R. Donohoo v. Action Wisconsin
 Case No. 2006AP000396

Dear Counsel:

I am writing in connection with the above-referenced case. In my current campaign for justice of the Wisconsin Supreme Court, I have received contributions from a variety of people and entities. I have just been notified that the following attorney has contributed to my campaign: Lester A. Pines

APPENDIX A

530

Counsel of Record
December 3, 2007
Page 2

I have consulted with James Alexander, Executive Director of the Judicial Commission, as to the applicable ethical rules pertaining to my involvement in such instances. Mr. Alexander suggests that if an attorney for a party has contributed to my campaign, that I disclose but not necessarily recuse. Because campaign contributions will in no way affect my judgment as to the outcome of this proceeding, I am writing to advise you of my decision to participate in this case.

Very truly yours,

Louis B. Butler, Jr.
Justice

LBB:rel
cc: Chief Justice Shirley S. Abrahamson
 Justice Ann Walsh Bradley
 Justice N. Patrick Crooks
 Justice David T. Prosser
 Justice Patience Drake Roggensack
 Justice Annette Kingsland Ziegler
 David R. Schanker, Clerk of Supreme Court

531

# SUPREME COURT OF WISCONSIN

No. 2006AP396

In the matter of attorneys fees in: Grant E. Storms, plaintiff, v. Action Wisconsin Inc. and Christopher Ott, defendants.

James R. Donohoo,

 Appellant,

 v.

Action Wisconsin, Inc. and Christopher Ott,

 Respondents-Petitioners.

---

Given the nature of the allegations made by James R. Donohoo in the "Petition for Disqualification of Justice Louis B. Butler, Jr. by Law and Petition for Rehearing" filed on June 26, 2008, I have disqualified myself from acting further on this petition.

Please be advised that I am granting a limited waiver of my confidentiality rights with respect to the matter of the allegations filed by Wisconsin Family Action, and I authorize the release of the decision rendered by the Wisconsin Judicial Commission.

Dated at Madison, Wisconsin, this 1st day of July, 2008.

Louis B. Butler, Jr., Justice

APPENDIX B

532

# STATE OF WISCONSIN
# JUDICIAL COMMISSION

Suite 700, Tenney Building
110 East Main Street
Madison, Wisconsin 53703-3328

James C. Alexander
Executive Director

Phone: (608) 266-7637
Fax: (608) 266-8647

April 28, 2008

CONFIDENTIAL

Julaine K. Appling, President
Wisconsin Family Action, Inc.
P.O. Box 1327
Madison, WI 53701-1327

Dear Ms. Appling:

At its meeting of April 25, 2008, the Judicial Commission reviewed the request for investigation that you filed regarding Wisconsin Supreme Court Justice Louis B. Butler.

The Commission's examination of this matter has resulted in a determination that there is no evidence of misconduct within the jurisdiction of the Commission to warrant further action or consideration by the Commission.

There is no case in Wisconsin or elsewhere that requires recusal of a judge or justice based solely on a contribution to a judicial campaign. The amounts of the contributions presented in your submission are relatively insignificant. They were legal and well within the maximum for individual contributions in Supreme Court races as established by state law. There were no contributions from any litigants in cases before the court, but rather two board members out of twelve made personal donations as did an attorney.

SCR 60.04(4), Wisconsin Code of Judicial Conduct requires recusal when the facts and circumstances indicate that a reasonable, well-informed person knowledgeable about judicial ethics standards and the justice system would reasonably question the judge's ability to be impartial. The Wisconsin Supreme Court Judicial Conduct Advisory Committee Opinion 03-1 says as follows:

APPENDIX C

533

"...the mere fact of prior support for, or opposition to, a judge's election does not necessarily rise to the level of an appearance of impropriety. Both the public and knowledgeable persons within the judicial system, are fully aware of, and likely comfortable with, the fact that people will support an individual for judicial office with various levels of assistance, monetary support or endorsements. This fact in and of itself does not create so close or special relationship so as to require automatic recusal."

In your submission you also allege that there is good reason to believe that Justice Butler spoke to a gay and lesbian organization in August of 2007 in support of LGBT equality. Judges and candidates for judicial office can announce their views on political and legal issues as long as they are not pledges or promises to decide cases in a certain way.

For the above reasons this matter has been closed. Commission proceedings and file on it remain strictly confidential pursuant to state law.

Thank you for sharing your concerns with the Commission.

Very truly yours,

James S. Alexander
Executive Director

JCA/llb

534

¶ 33. DAVID T. PROSSER, J. (*concurring*). The issue presented by the motion to vacate the decision in *Donohoo v. Action Wisconsin, Inc.*, 2008 WI 56, 309 Wis. 2d 704, 750 N.W.2d 739, is whether Justice Butler was disqualified from participating in this case as a matter of law.

¶ 34. The motion puts the issue about as starkly as it can be put, for it challenges the impartiality of a member of the court. The motion should not come as a surprise, however, given the predicament in which the movant finds himself and the frequency of similar attacks on other members of the court.

¶ 35. The court's response is a swift rebuff. This, too, should not be a surprise because any other response would encourage more challenges from disappointed or apprehensive litigants and others who seek to advance their interests or political agenda by attempting to induce targeted justices to withdraw from cases under pressure.

¶ 36. This case exposes some of the flaws in a system in which justices are elected. The court's opinion, which necessarily discloses the campaign details giving rise to this challenge, is not likely to enhance confidence in the court.

¶ 37. Why the supreme court finds itself in this awkward position and how elections to the court can be reformed are questions that deserve thoughtful analysis.

¶ 38. This concurrence will attempt to discuss several of these points in turn.

I

¶ 39. Attorney James R. Donohoo filed a defamation suit on behalf of Grant E. Storms against the defendants on February 23, 2004. The facts of the case

are discussed in this court's *Donohoo* opinion, 309 Wis. 2d 704, ¶¶ 7–30; *id.*, ¶¶ 92–99 (Roggensack, J., dissenting), and in the unpublished decision of the court of appeals, *Donohoo v. Action Wisconsin, Inc.*, No. 2006AP396, unpublished slip op. and order (Wis. Ct. App., May 30, 2007).

¶ 40. On June 28, 2005, the circuit court granted the defendants' motion for summary judgment. On January 4, 2006, the circuit court denied Storms's motion for reconsideration and granted the defendants' motion for costs and attorney fees.

¶ 41. In their original motion, the defendants asked for costs and attorney fees from both Storms and Attorney Donohoo. In a September 6, 2005, letter to the court, the defendants altered their request, asking for costs and attorney fees from only Attorney Donohoo. The circuit court's approval of this request is embodied in its January 23, 2006, order for judgment and in the February 2, 2006, judgment. As a result, Attorney Donohoo has been made solely liable for costs and attorney fees of $87,452.59.

¶ 42. On February 8, 2006, less than a week after the circuit court entered judgment, defendants filed a garnishment action against Attorney Donohoo's personal and business bank accounts. This action implicated Donohoo's wife. *See Action Wisconsin, Inc. v. James R. Donohoo*, 2006CV1039 (Milwaukee County, Feb. 8, 2006); Cary Spivak & Dan Bice, " 'Timing is everything,' a costly lesson," Feb. 18, 2006, http://www. jsonline. com/story/index.aspx?id=402734&format=print (last visited July 22, 2008). Although this action was subsequently dismissed, a similar action cannot be ruled out in the future.

¶ 42. Thus, this case sends a chilling message to attorneys who agree to represent persons and causes that are not viewed as politically correct.

¶ 44. Attorney Donohoo is not oblivious to contemporary legal developments. In recent years, justices of this court have been subjected to repeated demands that they recuse themselves from participation in pending cases. Often those demands are amplified by sensation-seeking reporters who appear to believe that freedom of the press entails a right to tamper with the administration of justice. Sometimes these well-publicized demands have caused a justice to withdraw from a case because the justice is not in a position to answer false allegations without appearing to comment on pending litigation.

¶ 45. If Attorney Donohoo believed that his claims of bias would be sympathetically reported, he is likely to be disappointed. In any event, he has failed to provide grounds to vacate the court's decision.

## II

¶ 46. In Wisconsin, justices come to the supreme court either by election or by gubernatorial appointment. Wis. Const. art. VII, secs. 4(1), 9. When a justice is appointed to the court to fill a vacancy, he or she must run for the office to retain the position in the first year in which there is not another election. To illustrate, Chief Justice Abrahamson was appointed to the court in 1976. She was required to run in 1979 while serving as a member of the court. In the past quarter century, justices who were appointed to the court and then ran for the position while serving are Louis J. Ceci (1984), Janine P. Geske (1994), Jon P. Wilcox (1997), Diane S. Sykes (2000), David T. Prosser (2001), and Louis B.

Butler, Jr. (2008). Of course, any justice who is elected to the court will seek *re*-election while serving on the court. Current examples are Shirley S. Abrahamson (1989, 1999, 2009), Ann Walsh Bradley (2005), and N. Patrick Crooks (2006).

¶ 47. When any sitting justice runs for the court, the justice is confronted with the problem of how to campaign and how to raise money for a campaign without creating a real or possible conflict of interest. Justices inevitably deal with attorneys, and attorneys have always played a significant role in funding judicial campaigns.

¶ 48. There are ethical rules that prohibit judges from personally soliciting campaign contributions, *see* SCR 60.06(4), but there are no clear guidelines or bright-line rules on when a justice's campaign committee may receive contributions from a party, a party's attorney, or members of the attorney's law firm. Consequently, the receipt of contributions—which is expected and probably necessary in a system of judicial elections—is bound to raise questions and generate differing reactions.

¶ 49. In the absence of clear guidelines, however, members of this court are not in a good position to second-guess a colleague's decision to participate in a case after his or her committee has received contributions. In some instances, there is no justification for such a review.

III

¶ 50. This case involves a publicly reported contribution from an attorney representing a party in a pending case as well as contributions from several members of that attorney's law firm. Attorney Lester

Pines filed a petition for review in this case on behalf of the defendants on June 29, 2007. On July 23, 2007, Attorney Pines contributed $300 to Justice Butler's campaign. On September 11, 2007, this court granted the petition for review. On December 3, 2007, Justice Butler advised the parties of the Pines contribution. On January 15, 2008, the court heard oral argument and tentatively decided the case. On June 5, 2008, the court issued its decision. Attorney Pines is a prominent attorney who appears frequently before the supreme court. There is no rule prohibiting the Pines contribution, and no likelihood that the Pines contribution had any influence on Justice Butler's decisions.

¶ 51. In the period after the case was decided internally and assigned by lot to Justice Ann Walsh Bradley, several members of the law firm of Cullen, Weston, Pines & Bach LLP contributed money to Justice Butler's campaign: Jordan Loeb ($100, February 2, 2008), Alison TenBruggencate ($250, February 25, 2008), Terri Gabriel ($100, March 6, 2008), Jordan Loeb ($100, March 17, 2008), and Nick Fairweather ($100, March 17, 2008). Attorney Fairweather appeared in court on behalf of Action Wisconsin in the garnishment action. These contributions all came after the case was decided internally and did not affect Justice Butler's decision.[1]

¶ 52. Attorney Donohoo also complains that Justice Butler's campaign received contributions from two members of the Action Wisconsin board: Peter Bock and Ruth Irvings. Peter Bock's $125 contribution to the campaign came before the court granted the petition for

---

[1] A justice's vote at conference after oral argument is a "tentative" vote in the sense that a justice may revise his or her position, even if the justice is the one writing the opinion. Changes in position occur but are infrequent.

review in this case. However, Peter Bock is much better known as a former legislator from Milwaukee who is married to Dane County Executive Kathleen Falk than as a member of the Action Wisconsin board. Ruth Irvings contributed $1,100 to Justice Butler's campaign but only $100 was contributed before the case was argued and decided. Ruth Irvings is a Milwaukee attorney and identified herself as such.

¶ 53. As a practical matter, a sitting justice is not well equipped to disclose to litigants all the affiliations of a contributor, even if those affiliations were timely disclosed by the contributor. At present, there is no such requirement in law. There is also no requirement that a justice disclose contributions to litigants. Disclosing arguably relevant contributions to every litigant forces a justice's professional staff to work closely with the justice's campaign staff.

¶ 54. Attorney Donohoo also points to the fact that Justice Butler appeared and spoke at the fundraising event for Center Advocates Political Action Committee (Center Advocates PAC) on August 26, 2007, while Action Wisconsin's petition for review was pending.

¶ 55. Supreme Court Rule 60.06(5) governs the "Solicitation and Acceptance of Endorsements." It reads:

> A judge or candidate for judicial office may solicit or accept endorsements supporting his or her election or appointment personally or through his or her committee. A judge, candidate for judicial office, or his or her committee is not prohibited from soliciting and accepting endorsements from lawyers and others. A judge or candidate for judicial office shall not knowingly personally solicit or accept endorsements from parties who have a case pending before the court to which election

or appointment is sought. Nevertheless, a judge or judicial candidate may personally solicit or accept endorsements from the types of organizations that ordinarily make recommendations for selection to the office. In soliciting or accepting an endorsement, a judge or candidate for judicial office should be mindful of the requirements of SCR 60.03 and 60.04(4).

¶ 56. The record shows that Action Wisconsin's petition for review was received by our court commissioners on July 13, 2007. A recommendation was made to the court for the court's August 13, 2007, conference. The petition was held for our conference on September 10, 2007, at which time the court granted review. Justice Butler appeared at the Center Advocates PAC Garden Party for Equality fundraiser on August 26, 2007. Presumably, he was present to promote his candidacy, meaning that he solicited the organization's support.

¶ 57. Although Justice Butler's appearance might seem problematic in that the Action Wisconsin petition was then pending, there are at least two reasons why this appearance was not prohibited. First, there is a distinction between Action Wisconsin, Inc., the party in this case, and Center Advocates PAC. According to a news release endorsing Justice Butler, Center Advocates PAC is "affiliated with Center Advocates, Inc.," which is a corporation separate from Action Wisconsin. In short, Center Advocates PAC was not a party. Second, Center Advocates PAC is the type of organization that ordinarily makes recommendations for selection to both partisan and non-partisan offices, including judicial offices. Thus, the organization is not implicated by the prohibition in SCR 60.06(5).

¶ 58. Because Justice Butler was not prohibited from appearing before and speaking to Center Advo-

cates PAC, he was not prohibited from receiving their endorsement. His appearance raises no question unless the organization used Justice Butler to promote the organization's fundraising and/or Justice Butler committed himself to decide cases of interest to the organization in a certain way. The court has no evidence that either event occurred.

¶ 59. Attorney Donohoo complains that Justice Butler was endorsed by Attorney Tamara Packard. The court has no evidence that Justice Butler sought this endorsement. There is no evidence that he accepted, approved, or was even aware of Attorney Packard's endorsement.

¶ 60. In sum, there is no violation of any statute or judicial rule, and, consequently, there is no basis on which to vacate the *Donohoo* decision.

IV

¶ 61. The system of electing supreme court justices is not without flaws. However, eliminating judicial elections would create an entirely new series of problems, and any notion of complete public funding of judicial campaigns is both unrealistic and meaningless without changes in the United States Constitution. Public funding will not eliminate independent expenditures, which are, by definition, beyond the control of a candidate.

¶ 62. It is entirely reasonable to have a dispassionate discussion on the role of public funding in judicial campaigns. But people who care about the judiciary must also look long and hard at why supreme court elections have become so contentious and expensive.

¶ 63. A court that is in the vanguard of making and changing law in a way that greatly benefits some

interest groups and seriously damages others is a court that is actively, if inadvertently, promoting the politicization of its own elections. Every litigant believes he is entitled to an impartial review of his case. If litigants do not believe they can get an impartial review of their cases, they will inevitably attempt to change the composition of the court.

¶ 64. For the reasons stated, I respectfully concur.