STATE of Wisconsin, Plaintiff-Appellant,

v.

Dimitri HENLEY, Defendant-Respondent.

Supreme Court

*No. 2008AP697–CR.—Decided July 12, 2011.*

2011 WI 67

(Also reported in 802 N.W.2d 175.)

610

611

¶ 1. PER CURIAM. Dimitri Henley characterizes his most recent motion to this court as a motion for reconsideration of the court's July 21, 2010 decision,[1] which concluded that in circumstances such as Henley presented, circuit court judges lack the authority to grant a new trial in the interest of justice and also denied his request of this court for a new trial in the interest of justice. Henley contends that by denying him a new trial and by providing no court procedures for reviewing Justice Roggensack's decision not to recuse,[2] this court has denied his right to due process under the Fourteenth Amendment to the United States Constitution.[3]

¶ 2. We conclude as follows: (1) Henley's motion for reconsideration meets none of the criteria for granting a motion for reconsideration and is therefore de-

---

[1] *State v. Henley*, 2010 WI 97, 328 Wis. 2d 544, 787 N.W.2d 350.

[2] Henley initially moved Justice Roggensack to recuse herself from the review of his case, citing Wis. Stat. § 757.19(2)(e) and (g) (2007–08), as well as SCR 60:04(4). Justice Roggensack denied his motion November 25, 2009. *State v. Henley*, 2010 WI 12, 322 Wis. 2d 1, 778 N.W.2d 853.

[3] The right to due process of law is also protected by Article I, Section 8 of the Wisconsin Constitution.

nied; (2) determining whether to recuse is the sole responsibility of the individual justice for whom disqualification from participation is sought; (3) a majority of this court does not have the power to disqualify a judicial peer from performing the constitutional functions of a Wisconsin Supreme Court justice on a case-by-case basis; and (4) Henley has received due process.

## I. DISCUSSION

¶ 3. Henley styles his pending motion as a motion for reconsideration of the court's opinion issued July 21, 2010 that denied him a new trial.[4] Internal Operating Procedures (IOP) II.J. provides the basis on which reconsideration may be granted:

> A change of decision on reconsideration will ensue only when the court has overlooked controlling legal precedent or important policy considerations or has overlooked or misconstrued a controlling or significant fact appearing in the record.

¶ 4. Henley cites no controlling legal precedent, important policy consideration or controlling or significant fact of record that the court's July 21, 2010 opinion overlooked in deciding that a new trial was not warranted. Accordingly, his motion for reconsideration meets none of the criteria for granting reconsideration and therefore, it is denied.

¶ 5. Furthermore, it appears that Henley is attempting to obtain reconsideration of the court's May 24, 2010 decision that did not grant his motion to

---

[4] *State v. Henley,* 328 Wis. 2d at ¶¶ 85-86.

remove Justice Roggensack from participation.[5] He contends that his right to due process was violated because Justice Roggensack's participation created an appearance of partiality, as explained in *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 129 S. Ct. 2252 (2009). Henley cites no authority under which he may bring a motion for reconsideration of the court's decision not to disqualify Justice Roggensack.

¶ 6. His assertion assumes that four justices of this court have the power to remove a fellow justice from participating in pending matters on a case-by-case basis. This court has not squarely addressed the institutional question of whether four justices of this court have the power, on a case-by-case basis, to prevent a judicial peer from participating in a pending matter. Given Henley's motion, and the repetitive nature of motions addressed to the court that request removal of justices from pending proceedings,[6] we address this institutional question now.[7]

---

[5] The dissenting opinion of the combined authorship of Chief Justice Abrahamson, Justice Bradley and Justice Crooks (hereinafter Abrahamson dissent) notes that Henley is not seeking reconsideration of the court's decision on the merits of whether Henley should be afforded a new trial. Abrahamson dissent, ¶ 41.

[6] A motion to disqualify a justice on a case-by-case basis has become the motion du jour, as litigants attempt to manipulate the decisions of this court by disqualifying justices whom they think may decide against the position a litigant takes. Between April 2009 and April 2010, 12 motions requested the court to disqualify a justice from participating in a pending case. In that one year period, more motions to disqualify a justice from a pending case were filed than the total of such motions in the preceding 10 years.

[7] The dissent avoids the per curiam's legal conclusion that a majority of the court does not have the institutional power to

¶ 7. The reader should not be misled by the dissenting opinion's attempts to characterize our decision as a ruling on whether Justice Roggensack ought to have been disqualified from participation in Henley's case. Henley's motion to the court to disqualify Justice Roggensack was not granted, and we see no reason to take it up again. Accordingly, the dissent repeatedly mischaracterizes what we decide in this opinion.[8]

¶ 8. The question decided herein is an institutional question, i.e., whether recusal may be forced upon a fellow justice on a case-by-case basis by his or her judicial peers. This question implicates constitutional functions: that of the court as an institution and those of individual justices as constitutional officers. Accordingly, we determine the institutional question of whether the court has the power[9] to prevent a justice from participating in pending proceedings, on a case-by-case basis.

¶ 9. Our decision on whether the court has the power to disqualify a judicial peer on a case-by-case basis does not affect one particular justice more than any other justice. By participating in this decision, no justice is sitting as a judge of his or her own cause. Rather, each justice, whether a part of the majority opinion or writing in dissent, participated in deciding this question. Full participation is appropriate because the resolution of this question affects the court as an

disqualify a sitting justice on a case-by-case basis. For example, the Abrahamson dissent attempts to shift the reader's focus with a number of irrelevant, rhetorical questions. Abrahamson dissent, ¶ 60.

[8] Abrahamson dissent, ¶¶ 45–49, 51–56.

[9] The court may act when a quorum of four members of the court participate, Wis. Const. art. VII, § 4, cl. 1, and a majority votes to act.

institution, for which each justice has an equal role in judicial decision making, and it affects the function of each justice as an independent constitutional officer. Accordingly, all justices are affected equally by our determination of the scope of the court's power in this regard. *See State v. Allen*, 2010 WI 10, ¶ 206, 322 Wis. 2d 372, 778 N.W.2d 863 (Roggensack, J., separate opinion).

¶ 10. Although motions to disqualify a justice from participating in a particular case have increased dramatically since the United States Supreme Court decided *Caperton,*[10] we have reviewed and decided challenges to individual justices' participation in particular cases prior to *Caperton.* On occasion, a motion to disqualify a justice has been brought before the justice participated in a pending matter, and on occasion, such a motion has been brought after that participation has occurred.

¶ 11. Furthermore, the issue presented in *Caperton* is not new to this state. Nearly two decades ago, in *In re Disciplinary Proceedings Against Crosetto,* 160 Wis. 2d 581, 466 N.W.2d 879 (1991), this court decided that when presented with a motion for disqualification based on due process grounds, each justice must decide for himself or herself whether his or her disqualification was required. In *Crosetto,* the motion to disqualify came before the court had decided the pending matter. Crosetto alleged that each justice had a disqualifying personal interest in Crosetto's disciplinary proceeding because Crosetto had leveled personal criticisms against each justice on other occasions. *Id.* at 584. Crosetto based his motion on the appearance of partiality, citing the due process clauses of the federal

---

[10] *See supra* note 6 above.

and state constitutions, and on Wis. Stat. § 757.19(2) (1989–90), just as Henley has here. *Id.* at 583.

¶ 12. The court denied Crosetto's disqualification motion. In so doing, six justices of the court did not convene to decide whether the seventh justice should be prevented from participating in Crosetto's motion. Instead, each justice, individually, decided Crosetto's motion. Each justice concluded for himself or herself that he or she was impartial and that his or her participation did not create the appearance of partiality.[11] *Id.* at 584. The court explained:

> The members of this court, *individually,* have determined that none has a significant personal interest in the outcome of this disciplinary proceeding such as would require our disqualification. Each is satisfied that his or her impartiality in this proceeding is unimpaired and, further, that our acting in this matter does not create the appearance of a lack of impartiality.

*Id.* (emphasis added).

¶ 13. Crosetto's allegation that an appearance of partiality was sufficient to cause a denial of his right to due process under the federal and state constitutions is very similar to the motion that Henley brings before the

[11] Chief Justice Abrahamson served on the Wisconsin Supreme Court when *In re Disciplinary Proceedings Against Crosetto,* 160 Wis. 2d 581, 466 N.W.2d 879 (1991), was decided. She decided for herself that she was not partial and that her participation in Crosetto's case did not create the appearance of partiality. *Id.* at 584. The Abrahamson dissenting opinion asserts that a justice's participation in such a decision that denies a motion to disqualify that justice is "unprecedented in this court." Abrahamson dissent, ¶ 49. This assertion is not correct. All justices of the Wisconsin Supreme Court participated in the motion to disqualify in *Crosetto,* including Chief Justice Abrahamson who now writes in dissent.

court. Both motions were based on an underlying allegation falling within the parameters of Wis. Stat. § 757.19 (1989–90); both Crosetto's motion and Henley's motion alleged a due process violation based on the appearance of partiality; both motions were decided by the individual justice for whom disqualification was sought; and both Crosetto and Henley were provided due process by the decisions that the justices individually made.

¶ 14. In *Donohoo v. Action Wisconsin, Inc.*, 2008 WI 110, ¶¶ 1–2, 314 Wis. 2d 510, 754 N.W.2d 480, the disqualification claim was made after the court had decided the pending case. Donohoo's motion for reconsideration contended that Justice Butler should not have participated because he had received contributions to his election campaign from members of Action Wisconsin's board and from its attorney while Action Wisconsin's case was pending before this court. *Id.*, ¶ 25. We explained the court's level of review when a party moves for disqualification of a justice in a pending case:

> "Appellate review of [a justice's] subjective determination is limited to establishing whether the judge made a determination requiring disqualification. [Stated otherwise] [t]he reviewing court must objectively decide if the judge went through the required exercise of making a subjective determination."

*Id.*, ¶ 24 (quoting *State v. Harrell*, 199 Wis. 2d 654, 663–64, 546 N.W.2d 115 (1996) (internal quotation marks and citations omitted).

¶ 15. The decisions on the merits of the motions to disqualify in *Donohoo* and *Crosetto* were made first and last by the individual justice for whom disqualification was sought. They are consistent with this court's

past treatment of motions to disqualify justices from pending cases. *See City of Edgerton v. Gen. Cas. Co. of Wis.*, 190 Wis. 2d 510, 521–22, 527 N.W.2d 305 (1995) (concluding that Justice Geske's declaration in open court that she would be impartial despite the type of industry that employed a family member demonstrated that she, herself, made the determination required); *State v. Am. TV & Appliance of Madison, Inc.*, 151 Wis. 2d 175, 183, 443 N.W.2d 662 (1989) (concluding that because Justice Bablitch decided for himself that he could be impartial, that decision was sufficient in regard to deciding a motion alleging that the prior decision of the court was void due to Justice Bablitch's participation).

¶ 16. In each of the cases where the disqualification of a justice has been addressed, except one, the justice for whom disqualification was sought made the first and final decision on the merits of the disqualification motion. The exception occurred in *Case v. Hoffman*, 100 Wis. 314, 75 N.W. 945 (1898).

¶ 17. In *Case*, reconsideration of the court's decision was premised on the allegation that Justice Newman should not have participated in determining the merits of the case. When the motion was decided, Justice Newman was dead and previous to his death, he had not ruled on the motion. *Id.* at 354. Therefore, there was no way for Justice Newman to make the first and last decision on the motion. Accordingly, *Case* is not relevant to the question of whether the court has the power to disqualify a justice on a case-by-case basis.

¶ 18. Our review of the power of the court vis-à-vis an individual justice begins with Article VII of the Wisconsin Constitution. Article VII establishes the functions of the Wisconsin Supreme Court as an institution. Article VII also describes the functions of an

individual justice as a constitutional officer. Therefore, we must interpret the scope of the court's power in a manner that is consistent with both functions as prescribed in the Wisconsin Constitution.

¶ 19. Under Article VII, the functions of the Wisconsin Supreme Court include superintending authority over all courts (Wis. Const. art. VII, § 3(1)); appellate jurisdiction over all courts (Wis. Const. art. VII, § 3(2)); and hearing of original actions and proceedings (Wis. Const. art. VII, § 3(2)). The court also has those implied or inherent powers "essential" to carrying out its constitutionally designated functions. *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385 (1929).

¶ 20. The supreme court performs its functions in the administration of justice. In so doing, the court "has an inherent power to adopt those *statewide measures* which are absolutely essential to the due administration of justice in the state." *In re Kading,* 70 Wis. 2d 508, 518, 235 N.W.2d 409 (1975) (emphasis added).

¶ 21. The court's superintending function may be exercised through disciplinary proceedings brought for cause or disability under the *statewide* Code of Judicial Conduct (Judicial Code).[12] It is through the Judicial Code that the court may exercise its power over an individual supreme court justice. Wis. Const. art. VII, § 11; *In re Kading,* 70 Wis. 2d at 516–17; *see also Cannon,* 199 Wis. at 402.

¶ 22. The Judicial Code provides justices with notice of conduct that is prohibited and with procedural due process in the adjudication of all claimed violations

---

[12] The Code of Judicial Conduct is contained in ch. 60 of the Supreme Court Rules. It was formerly referred to as the Code of Judicial Ethics.

of the Judicial Code's provisions. *See, e.g., In re Judicial Disciplinary Proceedings Against Laatsch,* 2007 WI 20, 299 Wis. 2d 144, 727 N.W.2d 488; SCR ch. 60. Accordingly, when the power of the court is brought to bear against a justice or judge pursuant to the Judicial Code, it is exercised pursuant to standards of conduct that are uniform throughout the state, with notice of the violation and an opportunity to be heard. The court's supervisory power is not exercised at the request of a party who seeks disqualification of a justice from a pending proceeding.

¶ 23. Furthermore, while employing the Judicial Code is a part of the supervisory function of the supreme court,[13] the court's power to discipline judges and justices arises in Article VII of the Wisconsin Constitution. The Judicial Code provides no authority to the supreme court to disqualify a justice from participating in a particular case when that justice has considered and decided a motion to disqualify him or her. *See Donohoo,* 314 Wis. 2d 510, ¶¶ 24–25; *City of Edgerton,* 190 Wis. 2d at 521–22; *Am. TV,* 151 Wis. 2d at 183; *Crosetto,* 160 Wis. 2d at 584. Rather, through its supervisory function, the court has established a Judicial Code that employs *statewide, uniform* criteria for the exercise of judicial functions in all cases.

¶ 24. In regard to limiting an individual Wisconsin Supreme Court justice's constitutional authority to act, Article VII of the Wisconsin Constitution also

---

[13] The supervisory function of the supreme court also embodies the authority to regulate the practice of law in Wisconsin, *Sands v. Menard, Inc.,* 2010 WI 96, ¶ 51, 328 Wis. 2d 647, 787 N.W.2d 384, and the authority to control the course of litigation in the circuit courts, *State ex rel. Fourth National Bank of Philadelphia v. Johnson,* 103 Wis. 591, 613, 79 N.W. 1081 (1899).

establishes the circumstances under which a justice can be prevented from exercising his or her judicial functions. It provides that a justice may be removed from office only through impeachment (Wis. Const. art. VII, § 1); pursuant to a disciplinary proceeding brought before the supreme court for cause or disability (Wis. Const. art. VII, § 11); and by address of both houses of the legislature (Wis. Const. art. VII, § 13). The voters may also recall a justice (Wis. Const. art. XIII, § 12).[14]

■

¶ 25. As we have explained, aside from actions brought under the Judicial Code, "[t]he only constitutional authority" to remove a justice rests with the legislature, by impeachment or address, *see In re Kading,* 70 Wis. 2d at 535, or the voters by recall. Accordingly, we conclude that this court does not have the power to remove a justice from participating in an individual proceeding, on a case-by-case basis.

■

¶ 26. Our conclusion explaining the scope of power that this court may exercise over a judicial peer is consistent with the court's past decisions on motions to disqualify a justice. It also is reflected in the court's IOP. The IOP directs that motions to disqualify a justice are to be decided solely by the justice at whom the motion is directed. IOP II.L.1. provides:

> Recusal or Disqualification of Justices. A justice may recuse himself or herself under any circumstances

[14] Of course, defeat in an election (Wis. Const. art. VII, § 4(1), § 9; Wis. Const. art. XIII, § 12) and a legislatively imposed mandatory retirement age (Wis. Const. art. VII, § 24(2)) also would terminate a justice's right to exercise judicial functions.

sufficient to require such action. The grounds for disqualification of a justice are set forth in Wis. Stat. § 757.19. *The decision of a justice to recuse or disqualify himself or herself is that of the justice alone.*

(Emphasis added.)

¶ 27. In addition, the court's IOP mirrors the way in which the United States Supreme Court addresses motions to disqualify a Supreme Court Justice. When a motion is made to disqualify a Justice of the Supreme Court, one of three things happens: (1) the Justice for whom disqualification is sought decides the motion individually,[15] (2) the entire Supreme Court, including the Justice for whom disqualification is sought, issues a one sentence denial of the motion for disqualification,[16] or infrequently, (3) the entire Supreme Court issues a

[15] For example, in *Cheney v. United States District Court for the District of Columbia,* 541 U.S. 913 (2004), Justice Scalia, individually, decided the Sierra Club's motion to disqualify him. *See also Microsoft Corp. v. United States,* 530 U.S. 1301 (2000) (Justice Rehnquist denied the motion for his disqualification.); *Hanrahan v. Hampton,* 446 U.S. 1301 (1980) (Justice Rehnquist denied the motion to disqualify him.); *Laird v. Tatum,* 409 U.S. 901 (1972) (Justice Rehnquist denied the motion to disqualify him.); *Gravel v. United States,* 409 U.S. 902 (1972) (Justice Rehnquist denied the motion for his own disqualification.); and *Guy v. United States,* 409 U.S. 896 (1972) (Justices Blackmun and Rehnquist individually denied the disqualification motions that were directed to each Justice.).

[16] In *Ernest v. United States Attorney for the Southern District of Alabama,* 474 U.S. 1016 (1985), the Court, including Justice Powell, issued a one sentence denial of the motion to disqualify Justice Powell; in *Kerpelman v. Attorney Grievance Commission of Maryland,* 450 U.S. 970 (1981), the Court, including Justice Burger, summarily denied the motion to disqualify Justice Burger; in *Serzysko v. Chase Manhattan Bank,* 409 U.S. 1029 (1972) the Court, including Justices Powell

623

one sentence denial of the motion for disqualification, with a notation that one of the Justices for whom recusal was sought did not participate.[17]

¶ 28. Furthermore, the United States Supreme Court *has never held* that a majority of that Court has the power to disqualify another Justice, i.e., a judicial peer, from participating in a pending proceeding because the Justice at whom the motion is directed is not impartial or that there is the appearance that the Justice is not impartial.[18] Significantly, the United States Supreme Court has not changed its own procedures on recusal subsequent to its decision in *Caperton.*

¶ 29. Little has been written about the institutional power of a majority of the Supreme Court relative to a motion to disqualify a fellow Justice. However, Justice Robert Jackson took issue with motions to disqualify an individual Justice that were addressed to the court as a whole and therefore, appeared to seek disqualification of a judicial peer by the vote of a majority of the court. In *Jewell Ridge Coal Corp. v.*

and Rehnquist, denied motions to disqualify Justice Powell and Justice Rehnquist in a one sentence statement.

[17] In *Wilson v. Dellums,* 438 U.S. 916 (1978), recusal was sought for both Justice Blackmun and Justice Rehnquist. In a one sentence statement, the court denied the motion. Justice Rehnquist took no part in the decision, but Justice Blackmun did participate. *Id.*

[18] There have been occasions when a Justice's health has impacted on court work. For example, in 1975 Justice William O. Douglas suffered a serious stroke that left him severely compromised. Seven of the remaining Justices decided not to assign Justice Douglas any more opinions to write. However, Justice Douglas was not disqualified from further participation in pending cases. *See* David J. Garrow, *Mental Decrepitude on the U.S. Supreme Court: The Historical Case for a 28th Amendment,* 67 U. Chi. L. Rev. 995 (2000).

*Local No. 6167, United Mine Workers of America,* 325 U.S. 897 (1945), he explained his concern: "In my opinion the complaint is one which cannot properly be addressed to the Court as a whole and for that reason I concur in denying it." *Id.* at 897 (Jackson, J., concurring). He reasoned that "[t]here is no authority known to me under which a majority of this Court has power under any circumstances to exclude one of its duly commissioned Justices from sitting or voting in any case." *Id.*

¶ 30. More recently, in a 2004 interview, Justice Ruth Bader Ginsburg explained that the decision about whether a Supreme Court Justice will be disqualified from participating in a proceeding is always made by the individual Justice at whom the motion to disqualify is directed. Ruth Bader Ginsburg, *An Open Discussion with Justice Ruth Bader Ginsburg,* 36 Conn. L. Rev. 1033, 1039 (2004).

■

¶ 31. For more than 150 years, the Wisconsin Supreme Court has provided due process to movants seeking disqualification of a justice in a pending proceeding by consistently following the practice of the United States Supreme Court in like motions and in regard to challenges to court decisions based on allegations that a particular justice should not have participated. As explained above, the court's past practice for addressing motions to disqualify a justice from a particular proceeding is firmly grounded in and required by the Wisconsin Constitution, which sets out the functions of the court and the ways in which performance of the duties of a justice may be limited. Due process is provided in all cases by the justice at whom the motion to disqualify is directed. *Crosetto,* 160 Wis. 2d at 584. Henley received due process in the same

manner here as Chief Justice Abrahamson provided due process to Crosetto when Crosetto moved for Chief Justice Abrahamson's disqualification.

¶ 32. Henley also ties his due process allegation to *Caperton*. However, *Caperton* has nothing to do with Henley's pending motion.

¶ 33. First, as the United States Supreme Court repeatedly said in its decision in *Caperton,* that decision is based on extraordinary and extreme facts.[19] *Caperton,* 556 U.S. at __, 129 S. Ct. at 2256, 2262, 2265. No extraordinary or extreme facts are related to Henley's motion. Second, *Caperton* addressed due process concerns in the context of a judicial election where extraordinarily large expenditures were made to elect a particular justice who then decided the case in which the contributor held a vested interest. *Id.* at 2265. Henley's motion is not based on extraordinary judicial election contributions made by a party with a then pending case. Third, *Caperton* did not decide whether a majority of the West Virginia court had the power to disqualify a judicial peer. Rather, in *Caperton,* the United States Supreme Court reviewed the actions of a state court justice and concluded that the justice, *himself,* did not apply the correct standard to the motion to recuse when he decided it. *Id.* at 2265.

¶ 34. The Supreme Court reinforced the focus of *Caperton*'s holding in *Citizens United v. Federal Election Commission,* 558 U.S. __, 130 S. Ct. 876 (2010),

---

[19] In *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 129 S. Ct. 2252 (2009), a party directly influenced a justice's election to the Supreme Court of Appeals of West Virginia through extraordinarily large expenditures when that party's case was pending and it was reasonably foreseeable that the pending case would come before the newly elected justice. *Id.* at 2264–65.

when it explained, "*Caperton* held that a judge was required *to recuse himself*" based on the timing of the extraordinary judicial campaign contributions that were made. *Id.* at 910 (emphasis added). *Caperton* cannot be read to support Henley's assertion that a majority of this court has the power to remove a judicial peer from participating in a pending case.

¶ 35. In addition, were *Caperton* expanded to support the disqualification of a justice on facts less extreme and egregious than those on which the *Caperton* decision was based, a party could attempt to affect the outcome of his case by filing disqualification motions against certain justices and not against other justices. *See Allen,* 322 Wis. 2d 372, ¶ 260 (Ziegler, J., concurring).

¶ 36. Furthermore, four justices forcing a fellow justice off a pending case will not increase the public's perception that the court is an impartial decision maker. Rather, the specter of four justices preventing another justice from participating will just as likely be seen by the public as a biased act of four justices who view a pending issue differently from the justice whom they disqualified.

¶ 37. Finally, removal of a justice from participating in an individual case negatively impacts judicial independence. This is so because motions for disqualification are not made in regard to a justice that the movant believes will decide the pending case in the movant's favor. Rather, they are made to exert pressure on a justice the movant believes will not decide the case as the movant wants it to be decided, or in motions after decision in order to cancel a justice's participation from a decision under which the movant did not prevail. *See Donohoo,* 314 Wis. 2d 510, ¶¶ 1–2 (moving to disqualify Justice Butler, who decided against Donohoo); *Jackson v. Benson,* 2002 WI 14, ¶ 2 & n.2, 249 Wis. 2d 681, 639

N.W.2d 545 (seeking the disqualification of Justice Wilcox, who had participated in the majority decision against Jackson); *City of Edgerton,* 190 Wis. 2d at 515–16 (requesting the disqualification of Justice Geske, who had participated in the majority decision); and *Am. TV,* 151 Wis. 2d at 177 (moving to disqualify Justice Bablitch, who had participated in the majority decision that decided against the State).

■

¶ 38. Henley's assumption that a majority of this court has the power to disqualify a judicial peer who has denied a motion to withdraw from a pending matter is without legal foundation. The constitutional functions of the court as an institution are set out in the Wisconsin Constitution, as are the ways in which a justice's constitutional functions may be limited. Henley's assumption is inconsistent with those constitutional provisions.

## II. CONCLUSION

¶ 39. Accordingly, we conclude as follows: (1) Henley's motion for reconsideration meets none of the criteria for granting a motion for reconsideration and is therefore denied; (2) determining whether to recuse is the sole responsibility of the individual justice for whom disqualification from participation is sought; (3) a majority of this court does not have the power to disqualify a judicial peer from performing the constitutional functions of a Wisconsin Supreme Court justice on a case-by-case basis; and (4) Henley has received due process.

¶ 40. The motion for reconsideration is denied without costs.

¶ 41. SHIRLEY S. ABRAHAMSON, C.J., ANN WALSH BRADLEY, J., and N. PATRICK CROOKS, J.

628

*(dissenting)*. The per curiam correctly observes that Henley's motion for reconsideration is in essence a motion pursuing the disqualification of Justice Patience D. Roggensack. The motion asserts that the court's decision in *State v. Henley*[1] violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because:

(A) Our court has failed to provide any process for judicial review of Justice Roggensack's decision not to recuse herself.[2]

(B) Justice Patience D. Roggensack has inappropriately participated in the *Henley* decision.

¶ 42. Henley's motion thus asks the court to rule on the legality of Justice Roggensack's participation in deciding this case.[3]

---

[1] *State v. Henley*, 2010 WI 97, 328 Wis. 2d 544, 787 N.W.2d 350.

The words "recusal" and "disqualification" are effectively synonymous and are often used interchangeably, as we use them here. Some distinguish between the two words, using "recusal" to refer to a judge's decision to stand down voluntarily and "disqualification" to refer to the statutorily or constitutionally mandated removal of a judge on the request of a moving party. *See State v. Allen*, 2010 WI 10, ¶ 9 n.1, 322 Wis. 2d 372, 778 N.W.2d 863.

[2] *See McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 232–34 (1934) ("[T]he Federal Constitution prohibits state courts of general jurisdiction from refusing [to enforce a federal right] solely because the suit is brought under federal law. . . . A state may not discriminate against rights arising under federal laws."). *See also Terry v. Kolski*, 78 Wis. 2d 475, 482, 254 N.W.2d 704 (1977); *State v. Allen*, 2010 WI 10, ¶¶ 46–47, 322 Wis. 2d 372, 778 N.W.2d 863 (Abrahamson, C.J., Bradley, J., & Crooks, J., lead opinion).

[3] Here is the history of Henley's motions to recuse Justice Roggensack. Henley initially addressed a motion only to Justice Roggensack to recuse herself on the basis of Wis. Stat.

¶ 43. Yet it is Justice Roggensack who provides the fourth, and deciding, vote for the unauthored per curiam denying Henley's motion to disqualify Justice Roggensack.

§ 757.19(2)(e) (the justice had previously handled the action or proceeding at issue while judge of an inferior court) and (2)(g), (subjective bias) and SCR 60:04(4) (Code of Judicial Conduct). Henley claimed that Justice Roggensack should not be sitting on his case because she sat on the "same case" when she was a judge on the court of appeals.

Justice Roggensack denied the motion, concluding that she is not precluded from participation in the present case under Wis. Stat. § 757.19(2)(e) and (g) or SCR 60.04(4). For the memorandum decision, see *State v. Henley*, 2010 WI 12, 322 Wis. 2d 1, 778 N.W.2d 853.

Henley then addressed a motion to the court to disqualify Justice Roggensack on the basis of Wis. Stat. § 757.19(2)(e) and (2)(g). The court ordered the State of Wisconsin to respond to Henley's motion and memorandum in an unpublished order dated Feb. 8, 2010, which is attached for reference. Justice Roggensack did not participate in this Feb. 8, 2010, order.

The court then issued the attached unpublished order dated May 24, 2010, addressing Henley's motion addressed to the court. Justice Roggensack did not participate in this May 24, 2010, order. The order stated, among other things, that the justices divided 3–3 and that "[n]o four justices have agreed to grant Henley's motion to the court to disqualify Justice Roggensack on grounds of Wis. Stat. § 757.19(2)(e)." *See* May 24, 2010, order attached hereto.

In the May 24, 2010, court order, Justice David T. Prosser, Justice Annette K. Ziegler, and Justice Michael J. Gableman concluded that the court does not have the power to disqualify a fellow justice, referring to the writings of Justices Prosser, Roggensack, and Ziegler in *State v. Allen*, 2010 WI 10, 322 Wis. 2d 372, 778 N.W.2d 863. Chief Justice Abrahamson, Justice Ann Walsh Bradley, and Justice N. Patrick Crooks also referred to their separate writing in *State v. Allen*, concluding that it appears the court has the power (jurisdiction) to disqualify a

¶ 44. Justice Roggensack joins three colleagues, Justices David T. Prosser, Annette K. Ziegler, and Michael J. Gableman, to make four to rule on the motion to disqualify Justice Roggensack. Thus Justice Roggensack participates in a matter reviewing her own conduct. Without her vote there is no "per curiam," no "by the court." Without her vote there is no decision by the court.

¶ 45. Justice Roggensack fails to respect a bedrock principle of law that predates the American justice system by more than a century—"no man is allowed to be a judge of his own cause"[4]—a principle recently

justice and that this court has exercised its jurisdiction to decide disqualification motions against individual justices under § 757.19(2).

In the motion presently before the court, Henley again asks the court to disqualify Justice Roggensack from participating in his case. This motion offers new reasons to disqualify Justice Roggensack based on the reasoning in the court's opinion deciding the merits of Henley's case.

[4] See, for example, Justice Scalia's reference to "the wisdom of the ancient maxim '*aliquis non debet esse Judex in propria causa*'—no man ought to be a judge of his own cause," in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 329 n.* (2007) (Scalia, J., concurring) (quoting *Dr. Bonham's Case*, 77 Eng. Rep. 638, 646, 652 (C.P. 1610)); and *Ex parte Ah Oi*, 13 Haw. 534, 1901 WL 1300, *14 (1901) (Galbraith, J., dissenting) (" 'No man shall be a judge in his own cause' is a maxim that is ancient in use and of universal application in Anglo-Saxon communities.").

*See also In re Murchison*, 349 U.S. 133, 136 (1955):

To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear,

repeated by Justice Anthony Kennedy, writing for a majority of the United States Supreme Court in the *Caperton* case.[5]

¶ 46. That Justice Roggensack participates in this motion for reconsideration is not a due process or ethical calculation but a mathematical one: one vote plus three votes equals an attempt to achieve a majority.[6]

and true between the State and the accused denies the latter due process of law.' *Tumey v. State of Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 444, 71 L. Ed. 749. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 13.

[5] *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2265 (2009) (reversing a judgment of the Supreme Court of Appeals of West Virginia on the grounds that the Due Process Clause of the Fourteenth Amendment to the United States Constitution was violated when a justice in the majority participated in the case when objective standards required recusal).

See Justice Crooks' separate writing in *State v. Allen*, 2010 WI 10, ¶ 190, 322 Wis. 2d 372, 778 N.W.2d 863, commending Justice Gableman on withdrawing from the *Allen* decision, which involved a disqualification motion addressed to Justice Gableman.

In Wisconsin, if a justice should have been disqualified from considering the case and nevertheless participates, the decision is void. *State v. Am. TV & Appliance of Madison, Inc.*, 151 Wis. 2d 175, 179, 443 N.W.2d 662 (1989).

[6] The defendant's same due process arguments about the court's decision apply to the court's denial of his motion for reconsideration:

(A) Justice Roggensack has inappropriately participated in the denial of Henley's motion for reconsideration.

(B) The per curiam decision explicitly declares that no process exists in this court to review a single justice's decision not to recuse herself on due process grounds short of removal from

¶ 47. The per curiam attempts to obfuscate Justice Roggensack's being the judge of her own cause by saying that she can participate because "all justices are affected *equally* by [the] determination of the scope of the court's power in this regard." Per curiam op., ¶ 9 (emphasis added). This attempt to obfuscate is not persuasive. Henley's motion focuses on one justice, Justice Roggensack.

¶ 48. It was Justice Roggensack's participation in a related case while she was a judge of the court of appeals that has stimulated the two recusal motions in Henley's case. It is Justice Roggensack who disqualified herself from the court's decisions on Henley's first recusal motion. It is Justice Roggensack who now decides that she can participate in deciding Henley's second motion to disqualify her; this second motion is the motion addressed in the per curiam. It is Justice Roggensack's refusal to disqualify herself in the *Henley* case that is challenged—no one else's. It is Justice Roggensack who is immediately and directly affected by Henley's recusal motions.

¶ 49. A justice's participation in a motion addressed to the court challenging that justice's refusal to disqualify is unprecedented in this court. In every case in which a motion has been addressed to the court seeking review of a justice's participation in a case, the challenged justice has not participated in deciding the motion.[7]

office through constitutional means or judicial discipline. Per curiam, ¶¶ 24–25.

[7] In *In re Disciplinary Proceedings Against Crosetto,* 160 Wis. 2d 581, 466 N.W.2d 879 (1991), upon which the per curiam relies, no motion was addressed to the court. For a discussion of *In re Disciplinary Proceedings Against Crosetto,* 160 Wis. 2d

¶ 50. Over the years, several justices, including most recently Justice Ziegler and Justice Gableman, did not participate in the court's decisions on motions seeking court review of their decisions to participate in cases.[8] Why is this case different from all other cases addressing recusal of a justice?

581, 466 N.W.2d 879 (1991), and a full reprint of *In re Disciplinary Proceedings Against Crosetto*, see *State v. Allen,* 322 Wis. 2d 372 at ¶ 10 n.2, Appendix A.

[8] *See Krier v. Vilione,* Nos. 2006AP1573 & 2006AP2290 (motions filed challenging Justices Ziegler and Gableman; neither justice participated in court order ruling on motion.)

See the unpublished court orders in the following cases, in which the challenged justice did not participate in the court's order about disqualifying the justice:

*State v. Carter,* No. 2006AP1811–CR, unpublished order (Wis. S. Ct. Mar. 1, 2010) (Justice Gableman not participating)

*State v. Cross,* No. 2009AP3–CR, unpublished order (Wis. S. Ct. Nov. 11, 2009) (Justice Gableman not participating)

*State v. Dearborn,* No. 2007AP1894–CR, unpublished order (Wis. S. Ct. Mar. 1, 2010) (Justice Gableman not participating)

*State v. Jones,* No. 2008AP2342–CR, unpublished order (Wis. S. Ct. Dec. 16, 2009) (Justice Gableman not participating)

*State v. Littlejohn,* No. 2007AP900–CR, unpublished order (Wis. S. Ct. Mar. 1, 2010) (Justice Gableman not participating)

*State v. McGuire,* No. 2007AP2711–CR, unpublished order (Wis. S. Ct. Oct. 2, 2009) (Justice Gableman not participating)

*State v. Sveum,* No. 2008AP658–CR, unpublished order (Wis. S. Ct. Dec. 21, 2009) (Justice Gableman not participating)

See the following cases in which the challenged justice did not participate in the court's decision determining the validity of a decision in which the challenged justice participated:

*State v. American TV,* 151 Wis. 2d 175, 443 N.W.2d 662 (1989) (Justice Bablitch not participating)

*City of Edgerton v. Gen. Cas. Co.,* 190 Wis. 2d 510, 527 N.W.2d 305 (1995) (Justice Geske not participating)

¶ 51. The answer, of course, is that this per curiam is not different. We need go no further for an illustration of the axiom that a justice does not participate in the court's decisions on motions seeking court review of that justice's decision to participate than Justice Roggensack's not participating in two orders of this court relating to the court's consideration of Henley's prior motion seeking court review of Justice Roggensack's decision to participate in the *Henley* case.[9]

¶ 52. Justice Roggensack did not participate in the Feb. 8, 2010, order ordering briefs on the issue of Justice Roggensack's disqualification.[10] The order is attached.

¶ 53. Justice Roggensack did not participate in the May 24, 2010, order in which Justices Prosser, Ziegler, and Gableman declared the court had no power to disqualify Justice Roggensack.[11] The order is attached.

¶ 54. Moreover, Justice Roggensack, without explanation, withdraws from participation in an unpublished order dismissing Yasmine Clark's motion to file an amicus brief to reconsider the *Henley* opinion, even though Justice Roggensack previously participated in granting Ms. Clark's motion to file the amicus brief.[12]

*Jackson v. Benson*, 2002 WI 14, 249 Wis. 2d 281, 639 N.W.2d 545 (Justice Wilcox not participating)

*Donohoo v. Action Wis., Inc.*, 2008 WI 110, 314 Wis. 2d 510, 754 N.W.2d 480 (Justice Butler not participating)

[9] *See* note 3 above.

[10] *See* note 3 above.

[11] *See* note 3 above.

[12] See unpublished order in *State v. Henley,* of even date as this per curiam, dismissing Yasmine Clark's motion to reconsider the Henley opinion. Previously Justice Roggensack participated in granting Yasmine Clark's motion for leave to file a

¶ 55. Acting inconsistently in deciding various issues in the *Henley* case, Justice Roggensack now participates in this per curiam decision that addresses a motion to reconsider the *Henley* case.

¶ 56. Justice Roggensack's inconsistent conduct in sometimes disqualifying herself in the *Henley* case, and other times not, conflicts not only with accepted practice in this court but also with Supreme Court Internal Operating Procedure II.L.1., which provides in part: "When a justice recuses or disqualifies himself or herself, the justice takes no further part in the court's consideration of the matter."[13]

¶ 57. We turn now to the writings of Justice Roggensack and three colleagues. Four justices, Justices Prosser, Roggensack, Ziegler, and Gableman, writing as a per curiam, reach the following conclusions:

> (A) This court does not "have the power to disqualify a judicial peer from performing the constitutional functions of a Wisconsin Supreme Court Justice on a case by case basis."[14]

non-party brief. *See State v. Henley,* No. 2008AP697, unpublished order (Wis. S. Ct. Dec. 8, 2010).

[13] For a discussion asserting that due process should be extended so that once a judge has recused himself or herself, the judge may no longer affect the case, see S. Matthew Cook, Note, *Extending the Due Process Clause to Prevent a Previously Recused Judge from Later Attempting to Affect the Case from Which He was Recused,* 1997 B.Y.U. L. Rev. 423.

[14] Per curiam opinion joined by Justices Prosser, Roggensack, Ziegler, and Gableman, ¶¶ 2, 25, 39.

As we stated in our writing in *State v. Allen,* 2010 WI 10, 322 Wis. 2d 372, 778 N.W.2d 863, on the basis of our own research we concluded that the court had the power to disqualify a judicial peer, but we asked for briefs and oral argument on this issue.

(B) "Henley has received due process."[15]

¶ 58. Justices Patience D. Roggensack, David T. Prosser, Annette K. Ziegler, and Michael J. Gableman decide that the court has no power to disqualify Justice Roggensack. They reach this decision without the benefit of briefs or oral argument. The court has never had the benefit of briefs or oral argument on this issue in any case. Thus the court deviates from the traditional adversarial system, the foundation of our legal system and jurisprudence.

¶ 59. The per curiam joined by these four justices essentially treats the due process claim challenging the participation of a justice as nonjusticiable but then, in an inconsistent shift, decides the due process issue.[16] Thus Justice Roggensack participates in deciding the constitutional validity of her participation in the *Henley* case. Her participation is no longer limited to deciding the scope of the court's power to disqualify a judge. Justice Roggensack is a judge of her own cause.

¶ 60. Will Justices Prosser, Roggensack, Ziegler and Gableman comment on all recusal motions challenging a justice, thus rendering an advisory opinion even though they insist they lack the power to disqualify a justice?[17] Or will they comment on only those

[15] Per curiam opinion joined by Justices Prosser, Roggensack, Ziegler, and Gableman, ¶¶ 2, 32–35, 39.

[16] As Justice Crooks wrote in *Allen,* 322 Wis. 2d 372, ¶ 188, "[t]he writings by Justices Roggensack and Prosser, thus, essentially treat the due process claim as nonjusticiable."

[17] Compare Justice Prosser's separate writing in *Allen,* 322 Wis. 2d 372, ¶ 250, suggesting solutions such as personal and collective persuasion of a colleague who refuses to withdraw, delay of a case, or involvement of the Judicial Commission, with his position in the order in *State v. Henley* (attached) suggesting an advisory opinion.

recusal motions in which they can hold in favor of the challenged justice? And are they going to continue to comment on the grounds raised for disqualification without briefs or oral argument, as they do in the present case?

¶ 61. We three disagree with the conclusions that our four colleagues reach. The allegations in the motion and the conclusions in the per curiam are sufficient to justify briefs, oral argument, and full consideration. This motion should have been handled in an open, transparent, comprehensive manner.

¶ 62. In support of their conclusions, the four justices joining the per curiam substantially rely on and repeat much of Justice Roggensack's authored writing in *State v. Allen,* 2010 WI 10, 322 Wis. 2d 372, 778 N.W.2d 863, in which Justices Prosser and Ziegler both joined and wrote separately. Justice Gableman withdrew from participation in *Allen,* which involved the defendant's challenge to Justice Gableman's participation.

¶ 63. We three wrote at great length in *Allen,* covering 87 printed pages in the Wisconsin Reporter. In addition, Justice Crooks wrote a six-page separate opinion. We concluded in *Allen* on the basis of our research (although we sought briefs) that the court not only had jurisdiction (power) to decide the disqualification of a justice, but also had the constitutional responsibility to decide the issue.[18]

¶ 64. In *Allen,* we wrote on all the topics addressed in the per curiam, including the court's juris-

---

[18] For a proposed resolution before the American Bar Association recommending that state supreme courts clearly articulate procedures for judicial disqualification determinations, including prompt review by another judge or tribunal, or as otherwise provided by law or rule of court, of denials of requests to disqualify a judge, see:

diction to disqualify a justice or a judge; all the cases the per curiam cites; the subjective and objective grounds of disqualification under Wis. Stat. § 757.19(2); this court's prior cases deciding the due process and statutory rights of a litigant when a challenged justice or a judge participated in a matter; the recusal practices of the United States Supreme Court and supreme courts of other states; the *Caperton* decision; and due process standards of disqualification.

¶ 65. For ease of reference we include pinpoint citations to our analysis in *Allen* of cases discussed in the per curiam decision:

> *Caperton v. A.T Massey Coal Co., Inc.*, 556 U.S. 868, 129 S. Ct. 2252 (2009): *See Allen*, 322 Wis. 2d 372, ¶¶ 88–98, *passim*.

---

AMERICAN BAR ASSOCIATION
STANDING COMMITTEE ON
JUDICIAL INDEPENDENCE REPORT
TO THE HOUSE OF DELEGATES RESOLUTION

RESOLVED, That the American Bar Association urges states to establish clearly articulated procedures for:

A. Judicial disqualification determinations; and

B. Prompt review by another judge or tribunal, or as otherwise provided by law or rule of court, of denials of requests to disqualify a judge.

. . .

FURTHER RESOLVED, That the Standing Committee on Ethics and Professional Responsibility and the Standing Committee on Professional Discipline should proceed on an expedited basis to consider what amendments, if any, should be made to the ABA Model Code of Judicial Conduct or to the ABA Model Rules of Professional Conduct to provide necessary additional guidance to the states on disclosure requirements and standards for judicial disqualification.

*In re Disciplinary Proceedings Against Crosetto*, 160 Wis. 2d 581, 466 N.W.2d 879 (1991): *See Allen*, 322 Wis. 2d 372, ¶ 10 n.2, Appendix A.

*Donohoo v. Action Wisconsin, Inc.*, 2008 WI 110, 314 Wis. 2d 510, 754 N.W.2d 480: *See Allen*, 322 Wis. 2d 372, ¶ 42.

*State v. Harrell*, 199 Wis. 2d 654, 546 N.W.2d 115 (1996): *See Allen*, 322 Wis. 2d 372, ¶¶ 86 n.54, 98 n.68.

*City of Edgerton v. General Cas. Co. of Wis.*, 190 Wis. 2d 510, 527 N.W.2d 305 (1995): *See Allen*, 322 Wis. 2d 372, ¶¶ 76, 165.

*State v. American TV & Appliance of Madison, Inc.*, 151 Wis. 2d 175, 443 N.W.2d 662 (1989): *See Allen*, 322 Wis. 2d 372, ¶¶ 41, Appendix A.

*Case v. Hoffman*, 100 Wis. 314, 74 N.W. 220 (1898): *See Allen*, 322 Wis. 2d 372, ¶¶ 39–40, 73.

*State v. Cannon*, 199 Wis. 401, 226 N.W. 385 (1929): *See Allen*, 322 Wis. 2d 372, ¶ 83.

*In re Kading*, 70 Wis. 2d 508, 235 N.W.2d 409 (1976): *See Allen*, 322 Wis. 2d 372, ¶¶ 48, 53, 81.

*Jackson v. Benson*, 2002 WI 14, 249 Wis. 2d 681, 639 N.W.2d 545: *See Allen*, 322 Wis. 2d 372, ¶ 41 n.15.

*Cheney v. United States Dist. Court for Dist. of Columbia*, 541 U.S. 913 (2004): *See Allen*, 322 Wis. 2d 372, ¶¶ 60, 152–54.

*Microsoft Corp. v. United States*, 530 U.S. 1301 (2000): *See Allen*, 322 Wis. 2d 372, ¶ 149 n.18.

*Hanrahan v. Hampton*, 446 U.S. 1301 (1980): *See Allen*, 322 Wis. 2d 372, ¶¶ 59 n.37, 151 n.20.

*Laird v. Tatum*, 409 U.S. 901 (1972): *See Allen*, 322 Wis. 2d 372, ¶¶ 59 n.37, 151 n.20, 153 n.23.

*Gravel v. United States*, 409 U.S. 902 (1972): *See Allen*, 322 Wis. 2d 372, ¶¶ 59 n.37, 151 n.20.

*Guy v. United States*, 409 U.S. 896 (1972): *See Allen*, 322 Wis. 2d 372, ¶¶ 59 n.37, 151 n.20.

*Ernest v. U.S. Attorney for S. Dist. of Alabama*, 474 U.S. 1016 (1985): *See Allen*, 322 Wis. 2d 372, ¶¶ 58 n.36, 150 n.19.

*Kerpelman v. Attorney Grievance Comm'n of Md.*, 450 U.S. 970 (1981): *See Allen*, 322 Wis. 2d 372, ¶¶ 58 n.36, 150 n.19.

*Serzysko v. Chase Manhattan Bank*, 409 U.S. 1029 (1972): *See Allen*, 322 Wis. 2d 372, ¶¶ 58 n.36, 150 n.19.

*Jewell Ridge Coal Corp. v. Local No. 6167*, 325 U.S. 897 (1945): *See Allen*, 322 Wis. 2d 372, ¶¶ 61, 140–48.

¶ 66. We have reviewed our *Allen* writings. We shall not rewrite our writings in *Allen* or attempt to summarize them. We stand by our *Allen* writings. We incorporate them in full into this dissent.

¶ 67. For the reasons set forth, we dissent from the denial of Henley's motion for reconsideration.

OFFICE OF THE CLERK

Supreme Court of Wisconsin

110 EAST MAIN STREET, SUITE 215
P.O. Box 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

February 8, 2010

To:

Keith A. Findley
Frank J. Remington Center
975 Bascom Mall
Madison, WI 53706-1399

Susan V. Happ
District Attorney
Rm. 225
320 South Main Street
Jefferson, WI 53549

Katherine Desmond Lloyd
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Colleen Ball
State Public Defender's Office Appellate
Division
735 North Water St. #912
Milwaukee, WI 53202

Nicholas L. Chiarkas
State Public Defender's Office
Box 7923
Madison, WI 53707-7923

William J. Tyroler
Asst. State Public Defender
735 North Water St. #912
Milwaukee, WI 53202

You are hereby notified that the Court has entered the following order:

2008AP0697 State v. Henley L.C. #98-CF-486

On October 30, 2009, Defendant-Respondent Dimitri Henley filed his motion directed to Justice Patience D. Roggensack individually seeking her disqualification and/or recusal in this matter. On November 25, 2009, Justice Roggensack filed her memorandum decision denying Henley's motion. On January 8, 2010, Henley filed his motion requesting that this court enter an order disqualifying Justice Patience Roggensack from participating in the merits of this matter under Wis. Stat. § 757.19(2)(e).

IT IS ORDERED that the State of Wisconsin shall respond to Henley's January 8, 2010 motion and memorandum within 10 days of the date of this order.

642

IT IS FURTHER ORDERED that Defendant-Respondent Dimitri Henley shall file a reply or a letter stating that no reply will be filed within 5 days of receipt of the State's response.

Roggensack, J. is not participating in the court's consideration of Henley's recusal motion directed to the court.

David R. Schanker
Clerk of Supreme Court

643

OFFICE OF THE CLERK

## Supreme Court of Wisconsin

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

May 24, 2010

To:
Hon. Jacqueline R. Erwin
Circuit Court Judge
Jefferson County Courthouse
320 S. Main Street
Jefferson, WI 53549

Carla Robinson
Clerk of Circuit Court
Jefferson County Courthouse
320 S. Main Street
Jefferson, WI 53549

Keith A. Findley
Frank J. Remington Center
975 Bascom Mall
Madison, WI 53706-1399

Susan V. Happ
District Attorney
Rm. 225
320 South Main Street
Jefferson, WI 53549

Katherine Desmond Lloyd
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Colleen Ball
State Public Defender's Office Appellate
Division
735 North Water St. #912
Milwaukee, WI 53202

Nicholas L. Chiarkas
State Public Defender's Office
P.O. Box 7923
Madison, WI 53707-7923

William J. Tyroler
Asst. State Public Defender
735 North Water St. #912
Milwaukee, WI 53202

You are hereby notified that the Court has entered the following order:

2008AP697-CR State of Wisconsin v. Dimitri Henley (L.C. #1998CF486)

On October 30, 2009, Defendant-Respondent Dimitri Henley filed a motion addressed to Justice Patience D. Roggensack requesting her recusal and/or disqualification from further participation in the consideration or decision in this matter. Henley's motion argued for recusal and/or disqualification pursuant to Wis. Stat. § 757.19(2)(e), Wis. Stat. § 757.19(2)(g), and SCR 60:04(4).

644

On November 25, 2009, Justice Patience D. Roggensack filed a Memorandum Decision concluding that she is "not precluded by law from participation" in the present case under Wis. Stat. § 757.19(2)(e) and (g) or SCR 60:04(4). Justice Patience D. Roggensack's memorandum Decision offered an explanation why § 757.19(2)(e) did not apply in the instant matter and individually denied the motion.

On January 8, 2010, Henley filed a motion addressed to the full court asking the court to disqualify Justice Patience D. Roggensack from participation in the merits of the case on the basis of § 757.19(2)(e). Wisconsin Stat. § 757.19(2)(e) provides that a judge shall disqualify himself or herself from a proceeding "When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court." Henley maintains that Justice Patience D. Roggensack "previously handled the action or proceeding at issue in this case when she participated on the court of appeals panel that affirmed co-defendant Jarrett Adams's conviction on direct appeal." See State v. Adams, No. 2002-0039-CR, unpublished slip op. (Wis. Ct. App. Nov. 7 2002).

On February 8, 2010, the court (with Justice Patience D. Roggensack not participating) ordered additional briefing.

No four justices have agreed to grant Henley's motion to the court to disqualify Justice Roggensack on grounds of Wis. Stat. § 757.19(2)(e).

Justice David T. Prosser and Justice Annette K. Ziegler conclude that the court does not have the power to disqualify a fellow justice but would analyze the statute and interpret the meaning of "previously handled the action or proceeding at issue while judge of an inferior court" in § 757.19(2)(e). For Justice David T. Prosser's and Justice Annette K. Ziegler's position on the court's lack of power to disqualify a justice, see the writing they joined in State v. Allen and their separate concurrences therein.

Justice Michael J. Gableman concludes for the reasons set forth in Section II.A. (¶¶204-229) of Justice Patience D. Roggensack's writing in State v. Allen, 2010 WI 10, 322 Wis. 2d 372, 778 N.W.2d 863, that the court does not have the power to disqualify a fellow justice and would dismiss this motion on that basis.

Chief Justice Shirley S. Abrahamson and Justices Ann Walsh Bradley and N. Patrick Crooks stated in their writing in State v. Allen that it appears the court has the power (jurisdiction) to disqualify a justice and that this court has exercised its jurisdiction to decide disqualification motions directed against individual justices under § 757.19(2). These justices conclude that the court should decide the merits of the disqualification motions but they do not decide the merits of the motion here because Justice David T. Prosser, Justice Annette K. Ziegler, and Justice Michael J. Gableman have concluded that the court does not have the power to disqualify a justice. Under these circumstances any decision on the merits of the motion or a discussion of the meaning and application of Wis. Stat. § 757.19(2)(e) to the facts of the present case would be merely an advisory opinion. This court does not render advisory opinions. See, e.g., Tammi v. Porsche Cars North America, Inc., 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783; Smith v. Town of Pershing, 10 Wis. 2d 352, 357, 102 N.W.2d 765 (1960).

No four justices have agreed to grant the defendant's motion to the court to disqualify Justice Patience D. Roggensack on the basis of Wis. Stat. § 757.19(2)(e).

IT IS ORDERED that because no four justices have agreed to grant Henley's motion to disqualify Justice Patience D. Roggensack, the motion is not granted.

Roggensack, J., did not participate.

David R. Schanker
Clerk of Supreme Court

646